THE FARMERS' LOAN AND TRUST COMPANY, as Substituted Trustee under the Will of GEORGE JONES, Deceased, Respondent, *v.* FRANCES C. KIP et al., Appellants, and DANIEL B. FEARING et al., Respondents.

1. REAL PROPERTY — INTERPRETATION OF SECTIONS 129–132 OF REAL PROPERTY LAW — MEANING OF "ABSOLUTE POWER OF DISPOSITION." In interpreting and applying sections 129 to 132 of the Real Property Law (L. 1896, ch. 547), prescribing in what cases the holder of "an absolute power of disposition" of real property shall be entitled to a fee therein equivalent to actual ownership, the requisites of such "absolute power of disposition" are to be found in section 133 of that law, which

provides that "Every power of disposition by means of which the grantee is enabled, in his lifetime, to dispose of the entire fee for his own benefit, is deemed absolute," which latter provision must be construed by giving to the word "entire" its proper meaning and emphasis in the context of the statute so that the power of disposition shall include the right to give possession as well as to convey title.

2. TRUST IN REAL PROPERTY—POWER OF APPOINTMENT BY DEED OR WILL, IN CESTUI QUE TRUST — WHEN NOT TRANSMUTED INTO ESTATE IN FEE BY SECTIONS 129–133 OF REAL PROPERTY LAW — UNLAWFUL SUSPENSION OF POWER OF ALIENATION   Where a testator, by his will, created a trust in real property for the benefit of a daughter, to continue during the longest of two lives in being, said property upon the termination of the trust to go to the "appointees by deed or by will" of the said daughter, and it appears that the latter could have made no deed during her lifetime which would have been effectual to deliver possession of the trust estate within the two lives upon which the trust term was measured except in contravention of the trust, an attempt by the daughter to create by her will a trust continuing the suspension of the power of alienation for another life is violative of the statutes against perpetuities, and the trust attempted to be created is void.   A contention that the effect of sections 129 to 133 of the Real Property Law upon the power of the daughter to appoint by deed was to transmute her estate in remainder into an estate in fee; that her absolute power of disposition was tantamount to an unrestricted and complete ownership, and that, since her estate was a fee which she could convey by deed, the period of suspension is to be computed from the date of her exercise of the power, and not from the time of its creation, cannot be sustained, since under such sections of the Real Property Law "absolute power of disposition" was requisite to change the daughter's estate into a fee, and it was necessary that such power should include the right to give possession as well as to convey title.

3. DECEDENT'S ESTATE — WHEN DEBTS OF DECEASED CESTUI QUE TRUST PAYABLE OUT OF HER GENERAL ESTATE, AND NOT OUT OF TRUST ESTATE, OVER WHICH SHE HAD POWER OF APPOINTMENT.   Where, in an action brought by the substituted trustee under the will of the father to obtain the directions of the court as to the distribution of the proceeds of the sale of the trust property, it appears that the daughter, at her death, had debts amounting to $5,000, but that she left a large personal estate, ample to pay them, and the creditors are not before the court asking that their claims be paid out of the appointed estate, the court will direct such debts to be paid out of the daughter's own general estate, and not out of that over which she had a power of appointment.

4. DECEDENT'S ESTATE — LEGACIES PAYABLE PRIMARILY OUT OF UNDISPOSED REMAINDER OF PERSONAL ESTATE — WHEN EQUITY WILL NOT DIRECT PAYMENT OF LEGACIES OUT OF ESTATE OVER WHICH TESTATRIX HAD POWER OF APPOINTMENT — MARSHALLING ASSETS.   Where

the daughter, by her will, first provided for the payment of debts and specific legacies, and then proceeded to dispose of the appointed estate in connection with the residue of her own estate by the attempted creation of a trust, thus indicating that her own estate was first to be devoted to the purpose of paying debts and legacies, and then to the trust, but that the estate over which she had a right of appointment was to go wholly into such trust, equity will not, by directing payment of the legacies out of the appointed estate, interpose its aid to change the general rule that a testator's personal estate, which the will does not otherwise dispose of or exempt, constitutes the primary fund for the payment of legacies, since the rule is controlling, unless the will in express terms or by necessary implication discloses a different intention on the part of the testator.    The doctrine of marshalling assets is applied to the settlement of estates only where it is necessary to enable all parties having equities therein to receive their due proportions, notwithstanding any intervening interests, liens or other claims of particular persons to prior satisfaction out of a portion of the funds.

*Farmers' Loan & Trust Co.* v. *Kip,* 120 App. Div. 347, affirmed.

(Argued April 3, 1908; decided May 26, 1908.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered June 18, 1907, which affirmed an interlocutory judgment of Special Term in an action brought to obtain a construction of the wills of George Jones, Rebecca Mason Jones and Frances Jones with reference to a fund held by the plaintiff as trustee.

George Jones died in the city of New York on December 13th, 1886.    He left no widow.    His surviving heirs at law and next of kin were his three daughters, Rebecca Mason Jones, Frances Jones and Margaret Smith; the defendant Daniel Butler Fearing, a grandson, who is the son of a deceased daughter; the defendant Lewis Quentin Jones, a grandson, being the son of a deceased son; and the appellant Frances Coster Kip (formerly Frances Coster Jones), a great granddaughter, who is a granddaughter of the deceased son.    At the time of his death George Jones owned a piece of real property situated in the city of New York and known as No. 70 Broadway.    By his will he gave this property to his executor William Alexander Smith " during the life of the longest liver

of my daughters, Frances Jones and Rebecca Mason Jones, in trust," to lease the same and pay over the net income thereof to his heirs at law above named in certain specified proportions. The will then provided: " At the death of the longest liver of my said daughters, Frances and Rebecca, I empower my executor to sell the said premises, number 70 Broadway, and I give and devise the proceeds thereof as follows:    ʼ

" One-fifth thereof to the appointees of my daughter Frances Jones, *by deed or by will*, and in default of such appointment, to her heirs at law.

" One-fifth thereof to the appointees of my daughter Rebecca Mason Jones, by deed or by will, and in default of such appointment, to her heirs at law.

One-fifth thereof to my daughter Margaret Smith."

Another one-fifth was given to his grandson Fearing, subject to the condition that, in case of his death without lawful surviving issue before the death of the longest liver of the said two daughters, it should go to his appointees, or in default thereof, to certain other persons. The remaining two-tenths were given to his grandson Lewis Quentin Jones and to his great-granddaughter, the appellant Frances Coster Kip, upon conditions practically identical in their import. The residue of the estate was given to the same persons and in the same proportions as the proceeds of the real property above mentioned, each of the daughters of George Jones receiving one-fifth absolutely.

Frances Jones never married. She died in the county of New York on April 15th, 1906, leaving a will in which, after making certain specific bequests, she provided as follows: " Third: I give, devise and bequeath to the New York Life Insurance and Trust Company    *    *    *    and to its successors, all the rest, residue and remainder of my estate, real and personal, of which I shall die seized and possessed, *or subject to my disposal by will*, to have and to hold the same during the life of Frances Coster Kip, daughter of my nephew Alfred Renshaw Jones, now deceased, in trust and with power to the said corporation and its successors to collect and receive the rents,

income and profits thereof, and to apply the said rents, income and profits to the use of the said Frances Coster Kip during her life.    Upon the decease of the said Frances Coster Kip leaving issue her surviving, I give, devise and bequeath the said rest, residue and remainder of my estate, real and personal, to her issue absolutely."

This action was brought by the plaintiff as substituted trustee under the will of George Jones, deceased, to obtain the directions of the court as to the distribution of the proceeds of the sale of the property No. 70 Broadway, the trust in which had been terminated by the death of said Frances Jones, who was the survivor of the two daughters whose lives measured the trust term.    Meanwhile the property No. 70 Broadway was sold, and the trial court has found that the proceeds retained the character of real estate.    The above quoted provision in the will of the testatrix Frances Jones, by which she attempted to create a trust to continue during the life of Frances Coster Kip in the residue of her estate, including the share of the testatrix in the Broadway property, or its proceeds, over which she had held a power of appointment by deed or by will, was decided to be invalid in so far as it related to the Broadway property, because it suspended the power of alienation thereof for more than two lives in being. Frances Jones left debts amounting to $5,000; and an individual estate consisting of personalty which, independently of any part of the proceeds of the Broadway property, was valued at $381,907.69.

The decision of the court at Special Term has been affirmed by the Appellate Division.    The defendants Frances Coster Kip and her infant son William Bergh Kip have obtained leave to appeal to this court.    The Appellate Division, in allowing the appeal, has certified the following questions for determination by this court.

1. Does the will of Frances Jones create a valid trust in one-fifth of the proceeds of No. 70 Broadway ?    2. If said trust be held invalid, should the debts of Frances Jones be paid out of the share of the proceeds of No. 70 Broadway, as

to which she had a power of appointment, instead of out of her individual estate? 3. If the said trust be held invalid, should the legacies given by the second clause of the will of Frances Jones be paid out of the share of the proceeds of No. 70 Broadway, as to which she had a power of appointment, instead of out of her individual estate?

*Ernest P. Hoes* and *Frank L. Hall* for Frances C. Kip, appellant. Frances Jones had power to convey the remainder during her lifetime by a conveyance operative *inter vivos.* (1 R. S. 732, § 73; *Cutting* v. *Cutting,* 86 N. Y. 522; *Deegan* v. *Wade,* 144 N. Y. 573; *Leggett* v. *Firth,* 132 N. Y. 7; Chaplin on Trusts, 435, § 500; *Jackson* v. *Leek,* 12 Wend. 105; *Rosseau* v. *Bleau,* 131 N. Y. 177; *Jackson* v. *Phipps,* 12 Johns. 418; *Ten Eyck* v. *Whitbeck,* 156 N. Y. 341.) By virtue of her power to appoint by deed Frances Jones became the owner of an absolute fee in remainder after the trust term. (1 R. S. 732, §§ 81–85; *Cutting* v. *Cutting,* 86 N. Y. 522; Sugden on Powers [ed. of 1856], 514; Lewis on Perp. [ed. of 1846], 323; Farwell on Powers [ed. of 1893], 286; Marsden on Perp. 250; 1 Jarman on Wills [6th ed.], 289; *Genet* v. *Hunt,* 113 N. Y. 158; Gray on Perp. § 524; *Rouss* v. *Jackson,* L. R. 29 Ch. Div. 521; *Edmonds* v. *Edmonds,* 55 L. J. Ch. 200; *Stuart* v. *Babington,* L. R. [27 Ir. Ch.] 551; *Hubbard* v. *Gilbert,* 25 Hun, 596; *Sheridan* v. *House,* 4 Keyes, 569; *Woodgate* v. *Fleet,* 44 N. Y. 1; *Livingston* v. *N. Y. L. Ins. & T. Co.,* 151 N. Y. 667; *Rudd* v. *Cornell,* 58 App. Div. 207.) The period of suspension should be computed from the death of Frances Jones. (*Hetzel* v. *Barber,* 69 N. Y. 1; *Jennings* v. *Conboy,* 73 N. Y. 230; 1 R. S. 725, § 35; *Livingston* v. *N. Y. L. Ins. & T. Co.,* 36 N. Y. S. R. 566; *McCurdy* v. *N. Y. L. Ins. & T. Co.,* 151 N. Y. 667.) If it be held that the fee of Frances Jones in the remainder is absolute only in regard to creditors, purchasers and incumbrancers, her debts should be paid out of the fund as to which she had power of appointment, and not out of her general estate. (*Sheridan* v. *House,* 4 Keyes, 569; *Woodgate* v. *Fleet,*

44 N. Y. 1; *Fargo* v. *Squiers*, 154 N. Y. 250.) In case of the invalidity of the trust created by the will of Frances Jones, the legacies given by the second clause of her will should be paid out of the fund as to which she had power of appointment, and not out of her general estate. (*Fargo* v. *Squiers*, 154 N. Y. 250.)

*Fritz W. Hoeninghaus* for William B. Kip, appellant. The words " deed " and " will " are not synonymous terms, and the fact that George Jones gave his daughter the power to dispose of the principal of the trust fund otherwise than by will compels the conviction that he recognized her ownership in fee of the remainder, and intended to give her the power to dispose of it during her lifetime. (L. 1890, ch. 565, § 207; *Bowdoin College* v. *Merritt*, 75 Fed. Rep. 480; *Ellis* v. *Pearson*, 58 S. W. Rep. 318; *Jordan* v. *Jordan*, 65 Ala. 301; *McDaniels* v. *Johns*, 45 Miss. 631.) Frances Jones had an absolute estate in remainder. (L. 1890, ch. 565, §§ 131, 133; *Genet* v. *Hunt*, 113 N. Y. 158; *Crooke* v. *County of Kings*, 97 N. Y. 421; *Livingston* v. *N. Y. L. Ins. & T. Co.*, 36 N. Y. S. R. 466; *McCurdy* v. *N. Y. L. Ins. & T. Co.*, 151 N. Y. 667.) In any event the specific bequests in the will of Frances Jones, as well as her debts and the expenses of administering her estate, are payable out of the fund of which she was given a power of appointment by the will of George Jones. (*Fargo* v. *Squiers*, 154 N. Y. 250.)

*Frederick H. Man* for plaintiff, respondent.

*Charles F. Brown, Lyman Ward* and *Thomas J. Sanson* for Lewis L. Jones et al., defendants, respondents. Frances Jones had no ownership in the trust property and no power to dispose of a remainder therein after the expiration of the trust term. (*Crooke* v. *County of Kings*, 97 N. Y. 421; *Livingston* v. *N. Y. L. Ins. & T. Co.*, 36 N. Y. S. R. 566, 151 N. Y. 667; *Deegan* v. *Wade*, 144 N. Y. 573; *Hume* v. *Randall*, 141 N. Y. 499; *Genet* v. *Hunt*, 113 N. Y. 158; *Dana* v. *Murray*, 122 N. Y. 604; *Cross* v. *U. S. T. Co.*, 131

N. Y. 330.) As the attempted appointment by Frances Jones would suspend the absolute power of alienation for more than two lives it was invalid. (*Salmon* v. *Stuyvesant*, 16 Wend. 320, 324; L. 1890, ch. 565, §§ 32, 158, 159; *Genet* v. *Hunt*, 113 N. Y. 158; *Dana* v. *Murray*, 122 N. Y. 604; *Booth* v. *Baptist Church*, 126 N. Y. 215; *Herzog* v. *T. G. & T. Co.*, 177 N. Y. 99.)

*Francis Smyth* and *John L. Cadwalader* for Daniel B. Fearing, defendant, respondent. The trust attempted to be created by Frances Jones in the property in question, and the remainder thereon to the issue which Frances Coster Kip may leave at her death, are absolutely void as suspending the power of alienation and the absolute ownership for three lives. (1 R. S. 723, §§ 14, 15; L. 1890, ch. 565, § 32; *Purdy* v. *Hoyt*, 92 N. Y. 446; *Everit* v. *Everit*, 29 N. Y. 39; *Hooker* v. *Hooker*, 166 N. Y. 156; *Matter of Howland*, 75 App. Div. 207; *Schlereth* v. *Schlereth*, 173 N. Y. 444; *Herzog* v. *T. G. & T. Co.*, 177 N. Y. 86; *Mansbach* v. *New*, 58 App. Div. 191; *Fargo* v. *Squiers*, 154 N. Y. 250; *Dana* v. *Murray*, 122 N. Y. 604; *Genet* v. *Hunt*, 113 N. Y. 158; *Tweddell* v. *N. Y. L. I. & T. Co.*, 49 App. Div. 258.) Frances Jones took only a power under the will of George Jones, and had no title whatever. (*Lent* v. *Howard*, 89 N. Y. 169; *Morse* v. *Morse*, 85 N. Y. 53; *Genet* v. *Hunt*, 113 N. Y. 158; *Hume* v. *Randall*, 141 N. Y. 499; *Deegan* v. *Wade*, 144 N. Y. 573.) The claim that the fund, subject to appointment, should go to pay Frances Jones' pecuniary legacies is unsound. (*Rice* v. *Haberson*, 63 N. Y. 493.)

Werner, J. The intricate questions presented upon this appeal have been considerably simplified by the able and illuminating arguments of counsel. These questions relate wholly to the testamentary disposition attempted to be made by Frances Jones of the remainder in an undivided one-fifth of the premises No. 70 Broadway, over which she had been vested with a power of appointment under the will of her

18

father, the late George Jones. This latter will had created a trust for the benefit of the daughter, Frances Jones, in an undivided one-fifth share of the premises referred to, which was to continue during the life of the longest liver of the testator's daughters, Frances and Rebecca; and upon the death of the survivor of these two, the one-fifth share which was the subject of the trust was to go to the appointees, " by deed or by will," of the testator's daughter Frances, and in default of such appointment, to her heirs at law. The attempt of Frances Jones to execute by will the power thus conferred upon her has given rise to the questions at bar. In the residuary clause of her will the testatrix created a trust which, in addition to her own estate, expressly included all property subject to her disposal by will. This trust was to continue during the life of Frances Coster Kip, the daughter of a nephew of the testatrix, to whom the income was to be paid, and at her death the remainder was to go to her issue. As the trust created by the will of George Jones, which is concededly valid, suspended the power to alienate the corpus of the trust estate during the whole of two statutory lives, the principal question with which we have to deal is whether the trust attempted to be created by Frances Jones is valid in so far as it relates to the subject of the trust under her father's will, to wit, the property known as No. 70 Broadway. If, as to that property, the trust set up in the will of Frances Jones, operates to suspend the power of alienation for another life, in addition to the two lives which measure the term of the trust created under the will of George Jones, it clearly contravenes the statutes against perpetuities and is void. (Real Prop. Law, § 32, L. 1896, ch. 547.) In support of the contention that the trust in the will of Frances Jones is void, in so far as it relates to No. 70 Broadway, the respondents refer to the statute which provides that : " The period during which the absolute right of alienation may be suspended, by an instrument in execution of a power must be computed, not from the date of such instrument, but from the time of the creation of the power." (Real Prop. Law, § 158.) Measured solely

by the standard prescribed by that section of the Real Prop-
erty Law, the period of suspension imposed by the two trusts
under discussion is extended through three lives.   The appel-
lants concede that, in cases where a power can only be executed
by will, the statute and arguments relied upon by the respond-
ents are controlling, but they contend that these have no
application where a power may be executed either by will or
by deed because, in the latter case, the period of suspension
must be computed from the date of the execution of the
power rather than from the time of its creation.   This con-
tention is based upon the provisions of the Real Property
Law relating to powers, which are substantially re-enactments
of the earlier Revised Statutes.   The first section of the
article upon the subject of powers ordains that: " Hereafter
the creation, construction and execution of powers, affecting
real property, shall be subject to the provisions of this article."
(Real Prop. Law, § 110.)   In *Cutting* v. *Cutting* (86 N. Y.
522, 535) the corresponding section of the Revised Statutes
was declared to mean that in construing powers the courts
must look to the provisions of the article on powers to ascer-
tain the effect in law which the creation and execution of a
power has upon the property subjected to it.   The sections
of the statute invoked by the appellants in aid of their
contention are as follows :

" § 129.   Where an absolute power of disposition, not accom-
panied by a trust, is given to the owner of a particular estate
for life or for years, such estate is changed into a fee absolute
in respect to the rights of creditors, purchasers and encum-
brancers, but subject to any future estates limited thereon, in
case the power of absolute disposition is not executed, and the
property is not sold for the satisfaction of debts."

" § 130.   Where a like power of disposition is given to a
person to whom no particular estate is limited, such person
also takes a fee, subject to any future estates that may be
limited thereon, but absolute in respect to creditors, purchasers
and encumbrancers."

" § 131.   Where such a power of disposition is given, and no

remainder is limited on the estate of the grantee of the power, such grantee is entitled to an absolute fee."

"§ 132. Where a general and beneficial power to devise the inheritance is given to a tenant for life, or for years, such tenant is deemed to possess an absolute power of disposition within the meaning of and subject to the provisions of the last three sections."

"§ 133. Every power of disposition by means of which the grantee is enabled, in his lifetime, to dispose of the entire fee for his own benefit, is deemed absolute."

The foregoing sections of the Real Property Law were numbered 81 to 85 inclusive in the Revised Statutes (Vol. 1, pp. 732, 733). They are substantially identical, and when they were created many of the perplexing intricacies of the common law relating to powers were swept away. The appellants argue that the effect of these sections upon the power of Frances Jones to appoint by deed was to transmute her estate in remainder into an estate in fee, and that her absolute power of disposition was tantamount to unrestricted and complete ownership. From this premise the argument proceeds to the conclusion that, since the estate of Frances Jones was a fee which she could convey by deed, the period of suspension is to be computed from the date of her exercise of the power, and not from the time of its creation. This contention is not without force, but we think it is fundamentally unsound. It was undoubtedly the rule of the common law that under a general power giving the donee the right to appoint at his pleasure, the period of suspension was computed from the time of the exercise of the power. This was because such a donee could appoint himself, and thus acquire an absolute power of disposition which was equivalent to actual ownership. (*Genet* v. *Hunt*, 113 N. Y. 158; 1 Jarman on Wills [5th Am. ed.], 291; Gray on Perpetuities, § 524; Sugden on Powers [1st Am. ed.], pp. 482, 483.) It is clear to the point of demonstration that in recommending for adoption the sections of the statutes above referred to, the revisers intended that this broad general rule of the common law

should be embodied in the statutes, and their evident purpose was to protect creditors against unscrupulous persons who, by the exercise of such powers, should seek to retain practical control and ownership of their property, and yet exempt it from the payment of their debts. This purpose is very succinctly set forth by the revisers in their notes (5th Ed. Stat. at Large, p. 327), where they say: "In reason and good sense there is no distinction between the absolute power of disposition and the absolute ownership; and to make such a distinction, to the injury of creditors, may be consistent with technical rules, but is a flagrant breach of the plainest maxims of equity." All that, however, is quite beside the real point upon which the case at bar must be decided. The question here is whether the statute has taken a remainder limited upon a precedent trust, out of the general rule that the computation of the period of suspension must be made from the time of the creation of a power, instead of from the day of its exercise. As bearing upon that question it is to be observed that the revisers had a very definite idea as to the requisites of an absolute power of disposition, for in section 133 of the Real Property Law, which, as above stated, is but a re-enactment of the corresponding section of the Revised Statutes, " every power of disposition by means of which the grantee is enabled, in his lifetime, to dispose of the entire fee for his own benefit, is deemed absolute." In the late Judge Folger's very able and exhaustive analysis of the statutes relating to powers he said that this section (86, Rev. Stat. ; 133, Real Prop. Law) shows what the revisers meant by their notes when they referred to a man's having property in that which he can sell when he chooses and dispose of the proceeds as he wills ; and he concluded that when they spoke of the power of disposition as being equivalent to actual ownership " they meant that power of disposition by which a person is enabled, in his lifetime, to dispose of the entire fee for his own benefit." (*Cutting* v. *Cutting, supra.*) That conclusion seems inevitable, but it cannot be adopted unless we give to the word "entire" its proper

meaning and emphasis in the context of the statute.  Unless
that word includes the right to give possession as well as to
convey title it has no meaning; and when it is so interpreted
as to embrace both of these quantities it becomes evident that
Frances Jones had no absolute power of disposition of the
entire fee as to No. 70 Broadway during her lifetime.  In this
view of the case we may give to the words " by deed " in the
will of George Jones their broadest possible signification, and
yet decide that Frances Jones could have made no deed which
would have been effectual to deliver possession of the trust
estate during the trust term created by her father's will.  The
absolute power of alienation is suspended when there is no
person in being who can convey an *estate in possession.*
(Real Prop. Law, § 32.)  Possession of this estate could not
have been delivered within the two lives upon which the
trust term was measured, except in contravention of the trust
(*Robert* v. *Corning*, 89 N. Y. 225), and the trust attempted
to be created by the will of Frances Jones continued the sus-
pension for another life.  The latter trust was, therefore,
void in so far as it relates to the property No. 70 Broadway.
This result is both logical and just.  There is nothing pecu-
liarly sacred about estates which are transmitted by means of
powers, and there is no sound reason why they should not be
governed by the same rules which control the devolution of
estates by other methods.  This is the view of this subject
expressed by this court in the language of Judge FINCH.
(*Crooke* v. *County of Kings*, 97 N. Y. 421.)  In that case
Mrs. Catin left her estate in trust for the benefit of her daugh-
ter Margaret during her life, and then gave Margaret power
to dispose of the whole estate by grant or devise.  There,
as here, the power to grant an absolute estate was incom-
patible with the trust.  In construing and reconciling the
inconsistent provisions of Mrs. Catin's will this court held
that Margaret took only a power to convey the remainder.
That deduction was very aptly expressed by Judge FINCH as
follows: " From that conclusion it follows that Mrs. Crooke
(Margaret) did not take under Mrs. Catin's will an absolute

fee.  And this result is inevitable because the granting power
did not cover the entire fee.  In *Cutting* v. *Cutting* (86 N. Y.
536) the meaning and construction of the absolute power of
disposition specified in sections 81 and 85, inclusive, of the
statute relating to powers, was settled with a care and pre-
cision which leaves us at liberty to take and depend upon the
result without repetition of the analysis which led to it.  But
one of the sections relates to a devising power, and as that
involves transmutation into a fee only in a case where given
to 'a tenant for life or for years,' which is not the situation
here, our attention must be confined to the remaining four
sections.  These, it was ruled, operated only upon an absolute
power of disposition, such and so broad that it permitted the
alienation of the entire fee during the lifetime of the donee.
Upon the construction to which I accede, the granting power
conferred upon Mrs. Crooke was not of that character, but
limited to a transfer of the remainder subject to the outstand-
ing estate for her life in her trustee.  So she took no fee
under Mrs. Catin's will, and upon the power to devise given
by that will to Mrs. Crooke, and its due execution by the
latter, must depend the validity or invalidity of the defendant's
title."

Thus far we have discussed the question solely upon its
relation to the statute.  In other words, we have considered
what we deem to be the logical and necessary effect of the
statute upon such a power as the one before us.  We con-
cede, as we think we must, that the statutory effect, and not
the donor's intent, is the controlling factor in the construction
of powers.  It may be added, however, that our interpreta-
tion of this power is not at war with the testamentary intent
disclosed in the will of George Jones.  We think that when
he gave to his daughter Frances the right to appoint as to one-
fifth of No. 70 Broadway, by deed or by will, upon the termi-
nation of a trust, which was to continue during the lives of
the donee and her sister, the testator did not intend to give
her a vested fee in remainder which she could dispose of
absolutely during her lifetime, either for her own benefit or

for her creditors. The creation of a trust during her life was inconsistent with a right of appointment to herself and a right of absolute disposition for her own benefit. To give the words "by deed" a meaning which would sanction such an incongruous result would be no less hostile to the obvious intention of the testator, than it is repugnant to a fair interpretation of the statutes. The testator's intent is entirely in harmony with such a restricted meaning of the words "by deed" as would have enabled the donee of the power in her lifetime to execute it in favor of any one who could have taken title in subjection to the trust and not in hostility to it. To prove that this interpretation of the will of George Jones is not unwarranted, we need only look to its later paragraphs in which he gives to his daughter Frances one-fifth of the residue of his estate "absolutely and forever." This residue was not a mere remnant of the testator's estate, but a substantial part of it and, as to that, he had no difficulty in making it plain beyond the possibility of misconception, that he intended Frances to have absolute control and dominion over it. The very contrast between this language and the words of the trust at once lead the mind to the opposite conclusion as to the trust estate.

In *Genet* v. *Hunt* (113 N. Y. 158), which is relied upon by the appellants, the question at issue in the case at bar was not before the court. There the question was whether certain trusts created in a will were void or valid under the statute of perpetuities. The will had been executed pursuant to a power of appointment reserved by the testatrix in a trust deed which she had executed in anticipation of marriage and the question, there as here, was whether the period of suspension should be computed from the time of the creation of the power or from the day of its execution. The difference between the two cases, it will be observed, lies in the fact that in the *Genet* case the power reserved was one that could only be executed by will, and in the case at bar it was one that could have been executed either by will or deed. The appellants have seized hold of certain broad generalizations in

the opinion of Judge ANDREWS in the *Genet* case to support
their contentions.   We can find nothing in that opinion which
is in conflict with our views now expressed, but, even if we
were mistaken about that, it is enough to say that any discus-
sion in the *Genet* case of powers to be executed by deed was
purely *obiter*, because not germane to the question actually
involved and decided.    The cases of *Livingston* v. *N. Y.
Life Ins. & T. Co.* (36 N. Y. St. Rep. 566; affd. on opin-
ion below *sub nom. McCurdy* v. *N. Y. L. I. & T. Co.*, 151
N. Y. 667) and *N. Y. L. I. & T. Co.* v. *Cary* (191 N. Y. 33)
are not opposed to our view of the question at bar, because
neither of them involve the construction or effect of the law
of powers.

Another question which comes to us on this appeal is
whether the debts which existed against the testatrix Frances
Jones at the time of her death should be paid out of the pro-
ceeds of No. 70 Broadway, or out of her own estate.   These
debts amounted to $5,000, and the estate of the testatrix, con-
sisting wholly of personalty, was inventoried at $381,907.69.
It is to be noted that this is not an action by creditors to com-
pel the application of the appointed estate to the payment of
their claims, and that the individual estate of the testatrix
was ample to pay them.   As to creditors and purchasers, a
person vested with such a power of disposition as was given
to Frances Jones becomes the owner of a fee, but there is no
question before us arising out of any such relation, since we
have neither creditors nor purchasers before us.   For this
reason we think the debts of Frances Jones are not to be paid
out of the estate over which she had a power of appointment,
but out of her own general estate.

The final question submitted for our decision is whether the
specific legacies in the will of Frances Jones are to be paid
out of her own estate or out of the estate as to which she
held a power of disposition.   The case of *Fargo* v. *Squiers*
(154 N. Y. 250) is cited as authority for the contention of the
appellants that equity will compel the payment of the specific
legacies provided for in the will of Frances Jones out of the

estate over which she had a power of appointment rather than out of her individual estate. In the *Fargo* case, as in the case at bar, the testatrix had attempted to create a trust which was void because in contravention of the statute against perpetuities; but there the parallel ends. In that case the opening words of the will expressed the intention of the testatrix to dispose of her own property and that over which she held a power of appointment. Her individual estate amounted to about $80,000, and she made specific bequests amounting to about $50,000. In these circumstances it was thought proper to charge the specific legacies upon the appointed estate, which was very large, leaving her own estate to be devoted to the trust which she had attempted to create in both estates, but which was only valid as to her estate. There the equitable rule of marshaling assets was properly invoked, for without it the trust, even so far as valid, would have largely failed for lack of financial support. In the case at bar the conditions are entirely different. The testatrix made no mention of the estate over which she had power of appointment until she reached the third paragraph of her will, in which she sets up a trust of the residue in both estates after having given directions for the payment of her debts and the specific legacies. As compared with the size of her individual estate of $381,907.69 her indebtedness of $5,000 was practically nominal, and the same disparity exists when the specific legacies are scrutinized. She divided her strictly personal effects among her near relatives and gave several specific money legacies; one for $5,000 to her sister Margaret Smith, and $1,000 to each of the children of her nephew William Alexander Smith. These facts have been referred to because they bear materially upon the propriety of equitable interference with the general rule that a decedent's own estate should be exhausted in the payment of his debts before resort can be had for that purpose to another estate over which he may have only a power of appointment. As the contention of the appellants under this head rests wholly upon the doctrine of marshaling assets it may be profitable to discuss most briefly the reason and

extent of the rule upon which it rests. Broadly defined it is a rule which courts of equity sometimes invoke to compel a creditor who has the right to make his debt out of either of two funds, to resort to that one of them which will not interfere with or defeat the rights of another creditor who has recourse to only one of these funds. It is not a vested right or lien founded on contract, but rests upon equitable principles called into action by the benevolence of the court. The main ground for judicial intervention in such cases is that it is necessary to secure the satisfaction of the claims of both creditors, and the rule is never applied where the party who seeks the aid of the doctrine has a complete remedy at law. (26 Cyc. 928 *et seq.*) As applied to the settlement of estates the doctrine may be defined to be such an arrangement of the different funds under administration as will enable all parties having equities therein to receive their due proportions notwithstanding any intervening interests, liens or other claims of particular persons to prior satisfaction out of a portion of these funds. (19 Am. Ency. Law, p. 1302.) The general rule is that the testator's personal estate, which the will does not otherwise dispose of or exempt, constitutes the natural and primary fund for the payment of legacies as well as of debts. (*Bevan* v. *Cooper*, 72 N. Y. 317.) This rule is controlling unless the will, either in express terms or by necessary implication, discloses a different intention on the part of the testator. (*Harris* v. *Fly*, 7 Paige Ch. 421.) In the will of Frances Jones there is not only no direction or intimation that the debts and legacies are to be paid out of the estate over which she had a power of appointment, but there is intrinsic and cogent evidence that they were designed to be paid out of her own estate. The will first provides for the payment of debts and specific legacies, and then proceeds to dispose of the appointed estate in connection with the residue of her own estate, thus indicating that her own estate was first to be devoted to these purposes and then to the trust; but the estate over which she had a right of appointment was to go wholly into the trust which she was attempting to

create. When we consider the comparatively trifling indebtedness of the testatrix, and the very limited scope of her specific benefactions as contrasted with the volume of her estate, we can think of no reason why equity should interpose its aid to change the usual rules governing the payment of debts and specific legacies. It is to be borne in mind, moreover, that the fund in court in the case at bar is real estate, and that debts and legacies are payable out of personalty, whenever that is ample for the purpose.

The judgment herein should, therefore, be affirmed, with a separate bill of costs to each respondent appearing in this court payable out of the fund; and each of the three questions certified to us should be answered in the negative.

CULLEN, Ch. J. With great reluctance I feel constrained by authority to concur in the opinion of Judge WERNER that the will of Frances Jones did not create a valid trust in the lands over which she held a power of appointment under her father's will. This reluctance is based on the belief that either the learned revisers must have failed to accomplish their avowed object or the courts have perverted their intention. In the note to the chapter on powers the revisers say: "That a change of the existing law is here not merely proper, but necessary, will be admitted by all * * *. In reason and good sense, there is no distinction between the absolute power of disposition and the absolute ownership; and to make such a distinction, to the injury of creditors, may be very consistent with technical rules, but is a flagrant breach of the plainest maxims of equity and justice." It is very difficult to see any distinction in the application of this principle to a case where the donee of a power can alienate in his lifetime for his own benefit the whole fee of the property and one where he can alienate only some particular interest. The interest that can be alienated for the benefit of the donee of the power should, on the principle which the revisers declare, be deemed the property of the donee, whether that interest be little or great. The difficulty is caused by the provisions of sections 77 and

78 (1 R. S. p. 732), defining general and special powers, by which the power is made general where it authorized the transfer or incumbrance of the fee, and special where it authorized the transfer or incumbrance of less than a fee. At common law the distinction between general and special powers depended upon the presence or absence of a limitation of the appointees under the power, and not upon the estate which was its subject. (Fowler on Real Property, pp. 471, 472; Sugden on Powers, p. 432.) If it were an original question I think the intent of the revisers should be carried out by holding that a remainder in fee is an entire fee within the terms of the section, but I concede that we are concluded to the contrary by authority. My reluctance is further occasioned by the reflection that had Frances Jones been properly advised her will might have been rendered entirely efficacious. The power of appointment being general she might by deed at any time during her life, have executed the power in favor of herself. (*Wood* v. *Wood*, L. R. [10 Eq.] 220; *King* v. *Warren*, 32 Beav. 111; *Beck's Appeal*, 116 Pa. St. 547.) Had she done so she could, under the decisions of this court, have created every estate, trust or otherwise, in that remainder which she could have done in the fee. (*N. Y. Life Ins. & T. Co.* v. *Cary*, 191 N. Y. 33.)

I agree with Judge Werner that the debts cannot be charged on the property, the subject of the power, because there is no direction in the will for their payment, but I see no reason why the legacies should not be so charged. (*Fargo* v. *Squiers*, 154 N. Y. 250.) The relative amounts of the personal estate of Frances Jones and of that which she had the power to dispose of by will seem to me to be wholly immaterial. The principle is that we should endeavor to execute the testator's intention, so far as is consistent with law, and that where a claimant has a right to payment out of two funds and another claimant can only look for satisfaction out of one fund, the first claimant shall be satisfied out of the fund in which he alone has a claim and that the second fund shall not be unnecessarily depleted for that purpose at the

expense of the other claimant. Under section 126 (1 R. S. p. 737) it was not necessary that Frances Jones should in terms refer to the power of appointment given to her by her father's will.

GRAY, HAIGHT, VANN and CHASE, JJ., concur with WERNER, J.; CULLEN, Ch. J., reads memorandum for modification; HISCOCK, J., absent.

Judgment affirmed.