John D. Bennett, J.
Pending the settlement of the account of Robert Black as one of the executors and trustees, he makes formal application for the court to authorize and direct partial distribution, -of $75,000 to him. This amount is said to be a very small fraction of the total amount distributable.
There are two trusts being accounted for: (1) a marital deduction trust of which the decedent’s wife was life beneficiary and (2) the residuary trust for the benefit of the decedent’s daughter Reva during her lifetime with half of the corpus payable to her at the age of 25 and the balance when she attains 30 years of age.
*363 The marital deduction trust terminated on the death of the widow, Renee Simon, on February 6, 1971. By the terms of the. decedent’s will, the widow had a general, testamentary, discretionary power of appointment (EPTL, art. 10). It is apparently conceded that the corpus of this trust was validly appointed by the widow’s will in its residuary clause quoted below in favor of this decedent’s stepson Robert Black to the extent of 75% (reduced to 66%% by agreement of the parties) and 25% in trust for his daughter Reva (plus 8%% outright to her and free of trust, by the same agreement of the parties).
This application is opposed by Robert Black’s half sister Reva, who is a coexecutor and cotrustee. Her objections are (1) that, although the marital deduction trust terminated and became distributable on February 6, 1971, it cannot be distributed until there is a complete accounting in the widow’s estate; (2) that the corpus is subject to the rights of another legatee, who is to receive $100,000 under a preresiduary clause in the widow’s will; (3) that such trust is subject to estate taxes which may be due to the Federal Government, the State of New York and the State of Florida on the estate of Renee Simon; and (4) that this trust corpus is also subject to any possible debts incurred by Renee Simon or by her estate, now being administered in the State of Florida. These contentions are based upon Reva’s contention that there was a merger of this marital deduction trust and the estate of Renee Simon, “ manifested ” by the terms of her will.
Although partial distribution is opposed here, it does appear that a cash payment of $200,000 was made from this estate to the estate of Renee Simon, apparently to furnish funds for the payment of estate taxes. The petitioner herein characterizes such payment as a “loan” and the objectant terms it a “ cash distribution ”.
The will of Renee Simon was made on September 9, 1968 at a time when she was residing in New York, although she died in the State of Florida and her will was probated there. By her will she first directed payment of her debts and funeral expenses without making any reference to her power of appointment. Then, by paragraph 1 ‘ second ’ ’ she directed that all estate and other death taxes with respect to any property “ included in my gross estate subject to such taxes * * * shall be paid by my Executor hereinafter named as expenses of administration out of the principal of my residuary estate, and shall not be apportioned or prorated to any legatee or devisee under this Will * * * or any person owning or *364 receiving any property not passing under this Will”. (Emphasis supplied.)
Paragraph “third” then bequeathed the sum of $100,000 to a niece, Renee Wolfe. She is not a party to this application.
( Paragraph “ fourth ” reads as follows: “ All the rest, residue and remainder of my property, real and personal and wheresoever situate including a power of appointment granted to me in the Last Will and Testament of my late husband, dave simón, I give, devise and bequeath as follows:
“ Seventy-five percent (75%) of my said residuary estate I give, devise and bequeath to my beloved son, Robert black, or his issue per stirpes.
“ The remaining twenty-five percent (25%) of my said residuary estate I give, devise and bequeath to my Trustee hereinafter named, and I direct my-Trustee as follows ”.
The only parties to this application are the petitioner Robert Black and his sister Reva Simon Hart and Walter Feldesman. In a pretrial conference with a law assistant referee, it was concluded that the principal question involved is whether there was a merger of the two estates. Counsel for the petitioner conceded, in effect, that if there was such a merger the distribution requested could not be made at this time and both counsel conceded that if there was no merger it would be a relatively simple matter to ascertain the nature and amount of the assets on hand in the. marital deduction trust as well as the maximum amount of debts, expenses and charges against the same so that a partial distribution could be made at this time without any danger of loss or harm to any other person or party involved. On this basis both counsel appearing agreed to serve and file memoranda of law, anticipating that the court would pass upon the question of merger and receive proof as to the assets, etc. at the beginning of the hearings now scheduled to begin today in the accounting proceeding, at which all parties will be represented.
The court has carefully examined this question. The briefs of both counsel have been very helpful. The court finds, however, that this question of merger involves a construction of both wills and the rights of other parties, especially Renee Wolfe, may be adversely affected. Accordingly this matter will be consolidated with the accounting proceeding. All other parties interested in this construction should be served with copies of the papers now filed on this application and given an opportunity to participate and perfect whatever pretrial pro *365 cedures to which they may be entitled before the question is presented to the court for determination.
As an alternative, pending the construction of both wills and determination of the accounting proceeding, the court will consider ordering such partial payment upon the filing of a full refunding bond. Arguments on this alternative will be heard this morning or as soon as convenient.
(July 3, 1973)
The question of construction of the above wills was first raised in connection with a proceeding by Robert Black to require partial distribution to him under the will of Dave Simon. By decision of this court dated November 13, 1972, that proceeding was consolidated with the above accounting proceeding and the court also ■ directed that further process be issued to all other parties interested in the construction. Appearances have been filed by all interested parties except Renee Lopez deHaro, who defaulted, and jurisdiction is now complete.
The questions involved and the relevant testamentary provisions are set forth in some detail in the decision of Novepaber 13, 1972 which is incorporated herein to avoid unnecessary repetition. Additional memoranda were filed by opposing counsel and the matter was submitted for decision without a hearing, based upon the language of both wills and the additional facts appearing in a stipulation dated May 15, 1973 signed by counsel for the appearing parties and by the guardian ad litem who represents the interest of the two infants.
The stipulation shows:
(1) The values of the individually owned assets of Renee Simon (who apparently died a resident of the State of Florida), as reflected in the TI. S. estate tax return filed by her executor $687,606
(2) Funeral and administration expenses incurred or to be incurred in administering the estate of Renee Simon, including attorneys’ fees and executors’ commissions, similarly reflected in said estate tax return 96,485
(3) Estimated Federal and State estate or inheritance taxes on Renee Simon’s estate
Federal $400,000
Florida 48,000
New York 10,600
458.600
*366 (4) Renee Simon’s debts, mortgages and liens as reflected in the said estate tax return Debts $ 2,624
Mortgages and liens 44,719
—-- 47,343
It was further stipulated that between September 9, 1968, the :date of Renee Simon’s will, and February 6, 1971, cash distributions of $95,000 were made to Renee Simon by the fiduciaries of the estate of Dave Simon, that during the same period Renee received commissions from Dave’s estate aggregating $5,817.41 and, further, that as of July 31, 1969 the unpaid principal balance on Renee Simon’s first mortgage note held by ;he estate of Dave Simon amounted to $55,183.39.
The above facts and figures were submitted, at least in part, to illustrate these arguments advanced by counsel on behalf of Reva Simon Hart: 1) that if this court holds that no merger was intended by Renee Simon, the ‘ ‘ so-called vested remainder interest* of the two infants would in all probability never come into existence” because all of Renee’s individually owned assets would probably be exhausted by the payment of debts, administration expenses and estate taxes — the latter being in large measure attributable to the appointive property; 2) that the preresiduary bequest of $100,000 made by Renee to her niece Renee Lopez deHaro in all probability could not be satisfied in full; and 3) that if no merger was intended, then this court, which has jurisdiction over the appointive property, will have to be called upon in a separate proceeding to take proof and to construe a certain agreement made between Robert Black and his sister, Reva Simon Hart, in the State of Florida.
As to the last point the court expresses no opinion as it has no place in this construction proceeding which involves only the wills of the decedents and their intent. Moreover, the certain agreement referred to was a settlement agreement between living persons which did not take place before this court.
There can be no doubt that the will of Dave Simon granted to his widow Renee a general, testamentary, discretionary power of appointment as now defined in EPTL 10-3.2 to 10-3.4 (formerly Real Property Law, §§ 133 to 135). The only limitation upon Renee’s authority as donee was that the *367 power be exercised by her last will and testament, and the donor’s will expressly stated in article fourth that such power otherwise was ££ without limitation.” By statute (EPTL 10-7.4) the property covered by this power of appointment is not subject to the payment of the claims of any creditors of the donee, of her estate, or the expenses of administering her estate. Professor I. Leo Grlasser in his Practice Commentary to EPTL 10-7.4 (17B McKinney’s Cons. Laws of N. Y., 1973-74 Supp., p. 139) points out that “ The last phrase,£ except in the case of a testamentary general power ’ was designed to assure that under no circumstances was a testamentary power to be deemed a postponed power which has become exercisable upon the donee’s death. Thus, as was previously indicated, if A disposes of a life interest in property to B with a testamentary general power in B to appoint the remainder, the power is not a postponed power which becomes exercisable on the death of B and the creditors of B can never reach the appointive property. ”
Accordingly, the New York statute supplies the answers to the questions regarding payment of Renee’s personal debts and the debts and expenses incurred or to be incurred in administering her estate. Such payments must come from those assets which were individually owned by Renee Simon, independently of the property which formed part of the marital deduction trust under Dave Simon’s will, because she did not manifest a contrary intention by appointing the property to her own estate or by expressly directing that such debts and expenses be paid out of the appointive property. . The court finds no language in Renee’s will manifesting an intention to appoint any of her husband’s property either generally to her own estate. or specifically to pay her own debts or expenses of administration. Neither is there any language to indicate an intention to have the general pecuniary bequest of $100,000 paid from the appointive fund.
As in Farmers' Loan & Trust Co. v. Kip (192 N. Y. 266, 282), Renee Simon ££ made no mention of the estate over which she had power of appointment until she reached * * * [the residuary clause, paragraph fourth] of her will, in which she sets up a trust of the residue in both estates ”. (Emphasis supplied.)
Again, at pages 283 to 284 the court in Kip discussed the general rule which is now partially codified in our present statute and then pointed out that ££ The will first provides for the payment of debts and specific legacies, and then proceeds *368 to dispose of the appointed estate in connection with the residue of her own estate, thus indicating that her own estate was , first to he devoted to these purposes and then to the trust; but the estate over which she had a right of appointment was to go wholly into the trust which she was attempting to create.”
In this case we are dealing with a strikingly similar will and power of appointment, and on the basis of the statute as well as the Kip case, the court holds that the appointive property which forms the corpus of the marital deduction trust under the will of Dave Simon is not subject to the payment of the . claims of any creditors of Renee Simon or of her estate and neither is it subject to any expenses of administering her estate.
Upon the same reasoning the court holds that the appointive property is not .subject to the payment of the bequest of $100,-000 under paragraph third of the will of Renee Simon to her niece Renee Wolf (now known as Renee Simon deHaro).
Chief Judge Crane stated in Low v. Bankers Trust Co. (270 N. Y. 143, 150): “ The general rule is that the testator’s personal estate, which the will does not otherwise dispose of or exempt, constitutes the natural and primary fund for the payment of legacies as well as of debts. This rule is controlling unless the will either in express terms or by necessary implication discloses a different intention on the part of the testator.” (Citing the Kip case, supra.) And at page 151: “ At least we can be sure of this, that there is nothing in the surroundings or the circumstances or the will itself which indicates in the slightest degree that the testator intended to modify the general rule that his personal estate pay these charges.”
As to the figures submitted and statements in the memorandum regarding the moneys received by Renee Simon after the date of her will, and the possible impact upon her intent of extraneous circumstances, this court does not see how her intent as evidenced by the will can be overcome or set aside because of something that Renee Simon “ might have done if [s]he had thought about it, but in reality failed to do # * * Our law is very liberal in permitting people to make wills as they please, but in the absence of a legally expressed will, property passes according to our statutes and decisions, and we have no power to override these in the absence of a properly worded and constructed will. Intent is not sufficient; the intent must be expressed according to law.” (Low, p. 152.)
It is claimed that a general “ merger ” was effected by the will of Renee Simon. While Renee Simon did have the power *369 to merge the appointive property with her own estate, she did not do so since the scheme of the will, as pointed out above and in the court’s prior decision, does not indicate any intention to merge the appointive property with Retoce’s own estate (cf. Fargo v. Squiers, 154 N. Y. 250; Matter of Wainwright, 248 App. Div. 336; Matter of Dodge, 11 Misc 2d 307). The language of the residuary clause in Renee’s will (par. fourth) reads in part as follows:
“ All the rest, residue and remainder of my property, real and personal and wheresoever situate including a power of appointment granted to me in the Last Will and Testament of my late husband, dave simón, I give, devise and bequeath as follows:
“ Seventy-five percent (75%) of my said residuary estate I give, devise and bequeath to my beloved son, Robert black, or his issue per stirpes.
“ The remaining twenty-five percent (25%) of my said residuary estate I give, devise and bequeath to my Trustee hereinafter named, and I direct my Trustees as follows:”.
The residuary clause indicates what might be termed a partial merger, or, as Simes and Smith* prefer, a “ blending ” of Renee’s residuary estate with the appointive property for the purpose of the residuary gift to Robert and the residuary trust for the benefit of Reva, one of 75% of the blended properties to her son and the remaining 25% in trust for the benefit of her daughter. By using the words “ said residuary estate,” it is obvious that she referred not only to the rest, residue and remainder of her own property but also to the property which was subject to the power of appointment. It is the same thing as though she had said, in so many words, that the residuary estate which she had in mind included not only the residuary of her own property but also the appointive property. It is noted also that she expressly gave such property to her “ trustee hereinafter named ” and she did not give or appoint the property to her own executor.
This blending in the residuary clause is further significant when we consider the question of estate taxes. The attitude and intention of Renee Simon with respect to estate taxes is to be gleaned from a reading of both paragraphs second and fourth of her will. Paragraph second reads as follows: “ I direct that all estate, inheritance, transfer, succession, legacy and other death taxes payable by reason of my death under the laws of the United States or any State or any political subdi *370 vision thereof or any foreign country or subdivision thereof, with respect to any property included in my gross estate subject, to such taxes, whether or not passing under this, my Last Will and Testament, or any Codicil to it, together with any interest on such taxes, shall be paid by my Executor, hereinafter named, as expenses of administration out of the principal of my residuary estate, and shall not be apportioned or prorated to any legatee or devisee under this Will, or any Codicil to it, or any person owning or receiving any property not passing under this Will or any Codicil to it:”
While Renee directed her executor to pay all estate taxes ‘ ‘ as expenses of administration,” the language then following refers to “ the principal of my residuary estate.” It is logical and reasonable to assume that th.e same phrase “ residuary estate ” had the same significance and meaning to Renee in paragraph second as it did in paragraph fourth. By this language, the court now holds, Renee Simon intended that any estate or death taxes with respect to the property included in her gross taxable estate should be a charge upon not only her individual, residuary estate as it would normally and legalistically be constituted, but also a charge upon the property over which she had the power of appointment. The estate taxes upon Renee Simon’s individual property or estate and upon, the appointive fund (If taxable in her estate) shall accordingly be paid from both sources, namely, the appointive fund and the residue of Renee Simon’s individual estate, to be allocated according to the relative proportions thereof.
This holding is consistent with the doctrine of marshaling of assets as expressed in Farmers’ Loan & Trust Co. v. Kip (270 N. Y. 143, supra). In Powell, Real Property (vol. 3, § 401) the doctrine of marshaling is discussed and it is there pointed out that appointive assets under a general power can on occasion be used to pay debts, administration expenses and death taxes. ‘ ‘ Frequently wills fail to provide specifically for these separate allocations. It will be remembered that there is a constructional preference for that construction which gives to an instrument its maximum effectiveness # * * Constructional aid of this sort can. be given by a court where the donee has not required the appointive assets to be used for the satisfaction of some particular disposition but instead has exercised the power by his whole will ’ ’ [which is not the case here] or ‘ ‘ by some explicit statement, or as the result of an inference made proper by a statutory presumption ” (pp. 378.64r-378.65). Powell further states (p. 378,66): “ This doctrine of marshaling has a similar applicability to exercises of a power of appointment made by *371 a residuary clause. Under such an application, however, allocations cannot be made to specific gifts made by the will [citing cases]. The rationale of this restriction is that the donee waited until the residuary clause before, adding the appointive assets to his estate, and should, therefore, be found to have intended his prior specific gifts to be paid exclusively from Ms owned assets. ’ ’ The author then observes that an allocation of appointive assets to the payment of debts might also be permitted under the Restatement of Property (§ 363). TMs extension to debts, of course, would be contrary to the New York statute, as above pointed out.
American Law of Property (1952), edited by Professor A. James Casner (vol. 5, § 23.59, p. 627 et seq.) discusses the marshaling of appointive assets and selective allocation of the “ blended ” fund. Therein is found an interesting discussion of the effect of “ blending ” provisions. Simes and Smith, The Law of Future Interests (2d ed., vol. 2, § 975, p. 437) in discussing the marshaling of owned and appointive property, state: “ It is obvious that the testator may state expressly the manner in wMch owned and appointed property are to be allocated to the various provisions of his will, and if he does so that settles the question. But if he does not, a question of construction arises, namely, How shall the owned and appointive property be allocated in the absence of any expression of intent in the wall? Essentially, this is a matter of implied appointment.”
All of the foregoing authorities appear to sustain the construction now reached by the court as to the donee’s intent in this case. The court has been given no information in tMs case as to the basis upon which Florida estate or inheritance taxes may have to be paid or are payable by the estate of Renee Simon which are listedin the stipulation as amounting to $47,992. The Federal estate taxes, however, are shown as being over $398,000 (subject to final audit). In this connection the opimon in Matter of King (22 N Y 2d 456) points out that the apportionment of Federal taxes which are generated by a power of appointment is not governed by State law but rather by Federal law (citing Riggs v. Del Drago, 317 U. S. 95, and other authorities). In that case the power of appointment had not been exercised but the testator-donee had specifically directed that the excess of estate taxes over the amount due on Ms own estate should be paid from the principal of the property over wMch he had a power of appointment. The lower court had correctly applied the Internal Revenue Code provisions but erred in holding that the donee could not burden the appointive property with such Federal tax without exercising Ms power of appointment. The *372 Court of Appeals held that the Internal Revenue Code mándated a pro rata apportionment of taxes between the appointive and nonappointive property and that the code ‘1 also gave the donee of the appointive property the option of directing otherwise ” (pp. 462-463). It was further held (p. 463): “ The statutory language ‘ Unless the decedent directs otherwise ’ is broad in scope and should be liberally construed.”
This court believes that the construction now reached in this case is properly liberal and consonant with the implied if not the manifest intention of the decedent.
To summarize the various determinations now made:
(1) The property covered by the power of appointment is not subject to the payment of the claims of any creditors of Renee Simon, of her estate, or the expenses of administering her estate.
(2) The pecuniary bequest of $100,000 must be satisfied out of the individually owned assets of Renee Simon and her own estate.
(3) The estate taxes with respect to the appointive property included in Renee Simon’s taxable estate shall be paid from, the appointive property.
(4) The trustee named by Renee Simon to administer the residuary trust under paragraph fourth of her will should qualify and be appointed by this court in the estate of Dave Simon as to the appointive property.
(5) The final accounting decree should provide for distribution by the trustees under Dave Simon’s will to Robert Black individually of the percentage share due him under paragraph fourth of Renee Simon’s will.

 This reference in counsel’s memorandum is to the court’s decision of April 16, 1973 which denied Reva’s application to set aside the sale of the Williams properties.

 The Law of Future Interests (2d ed.), vol. 2, § 974, pp. 433-436.