GEORGE C. GENET et al., as Executors, etc., Trustees, etc., Appellants, *v.* MARY R. HUNT et al., Respondents.

In 1853, C., in contemplation of marriage, executed a trust deed of all her estate, real and personal, to certain trustees to hold the same during coverture or until her death, if she should "not survive her said coverture," and apply the profits and income "as received, and not by anticipation," to her sole and separate use. In case of her death during coverture the deed provided that the trustees should convey and deliver all the trust estate remaining to such devisees and in such shares as she should by will direct, and in default of any such direction unto such person or persons "being her heir or heirs-at-law as would be entitled to take the same by descent from her in case the same was land belonging to her, situate in the state of New York." The contemplated marriage took place, and C. died during coverture, leaving two children, the issue of the marriage, surviving her, also leaving a will, by which she gave all of her estate to the executors in trust, to apply the rents and profits to the maintenance of, or pay the same over to, her children in equal parts during their lives, with remainder, on the death of either, of his share, to his heirs and next of kin. In case of the death of either child during minority and without issue, the whole estate to be held in trust for the survivor during life, with remainder to his heirs and next of kin. In case of the death of both children during minority and without issue, the whole estate was given absolutely to designated beneficiaries. In an action for the construction of the will, *held*, that the trust deed created a valid trust (1 R. S. 728, § 55, sub. 3), which neither the settlor alone, nor in conjunction with the trustees, could abrogate; that the power of disposition reserved in the deed was not an absolute power equivalent to absolute ownership (1 R. S. 733, § 85); that the will, therefore, was not an exercise by the testatrix of the "*jus disponendi*" incident of ownership, but simply the execution of a power of appointment, and therefore the question as to the validity of the trusts in the will was to be considered

in view of the trust deed and the statute of powers (1 R. S. 732, § 73 *et seq.*), and the period during which the right of alienation might be suspended was to be computed "from the time of the creation of the power" (§ 128), and so considered the trusts created by the will were in contravention of the statute against perpetuities as they were limited upon and made possible a suspension of the power of alienation of the real estate and the absolute ownership of the personal property for three lives, two of them not in being at the time of the creation of the power.

Also, *held*, that the difficulty was not removed by the provision of the Married Woman's Act (§ 2, chap. 375, Laws of 1849), providing that a trustee holding any property for a married woman may convey the same to her, on her written request, accompanied by a certificate of a justice of the Supreme Court that he has examined the property and made due inquiry as to the capacity of the married women to manage and conduct the same; that, assuming the trust in question was within that act, the disability imposed upon the trustee of an express trust by the general statute was not removed until the prescribed certificate was obtained; but *held*, that the act did not apply; that it was applicable only to nominal trusts, the sole object of which was to secure a married woman in the enjoyment of her separate estate.

(Argued January 28, 1889; decided April 16, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made January 22, 1887, which affirmed a judgment entered upon a decision of the court on trial at Special Term.

This action was brought by plaintiffs, as executors of the will of Caroline M. Riggs, deceased, to obtain a judicial construction of said will.

In 1853, Mrs. Riggs, then Miss Field, in anticipation of marriage with George F. Riggs, executed a trust deed, by which she conveyed all of her estate, real and personal, to trustees.

The terms of the trust, as stated in said deed, are as follows:

"*In trust*, nevertheless, that the said parties of the second part, the survivors or survivor of them, his heirs, executors, administrators or assigns, shall and do receive the rents, issues, profits and income thereof, for these presents, if the said party of the first shall so long live, and in case she, the said party of the first part, shall marry within the said term of one year, then

for and during the continuance of the coverture created by such marriage, and that the said parties of the second part, the survivors or survivor of them, his heirs, executors or administrators, during such term of one year, or during such coverture as the case may be, shall and do apply the said rents, issues, profits and income as received, and not by anticipation, to the sole and separate use of her, the said party of the first part, for and during the said term of one year or such coverture as aforesaid, in like manner as if she, the said party of the first part, were a *feme sole,* and in such manner as to be free from the control, disposition, debts or incumbrances of any husband she may marry within the said term of one year, and in case the said party of the first part shall be discovert at the end of the said term of one year, or such marriage shall take place within that term, and she, the said party of the first part, shall survive her said respected coverture thereby created, then either of such events, upon this further trust that they, the said parties of the second part, the survivors or survivor of them and his heirs, executors or administrators, shall and do forthwith, upon the expiration of the said term of one year or of such coverture, as the case may be, grant, convey, assure and deliver over absolutely to the said party of the first part, all and whatsoever may remain of the said hereby granted premises, and in case such marriage shall take place within the said term of one year, and the said party of the first part shall not survive her said coverture thereby created, then upon this further trust, that they, the said parties of the second part, the survivors or survivor of them, his heirs, executors or administrators, do grant, bargain assure and deliver all and whatsoever may remain of the hereby granted premises upon such devisee or devisees in such share or proportion as she, the said party of the first part, by her last will and testament, may direct, which will and testament she, the said party of the first part, is empowered, authorized and enabled to make, and by force of these presents, without any other or further reservation of power in that behalf, the same to alter, revoke and make anew with the same or different provisions from time to time and at all times during her

said coverture, notwithstanding her said coverture, at her free will and pleasure, in like manner as if she was a *feme sole,* provided, nevertheless, that every such alteration or revocation be made in writing subscribed by the said party of the first part, and attested by two subscribing witnesses. And provided, further, that she, the said party of the first part, shall not, however, exercise at any time during such coverture any power of anticipation in respect to the said hereby granted premises or any part thereof, than is by these presents expressly reserved or granted unto her, the said party of the first part, and in default of any such direction or in respect to any of the said hereby granted premises, as to which there shall not be any such direction duly and effectually made, upon this further trust that upon the death of the said party of the first part discovert, as aforesaid within the said term of one year or afterwards during her said coverture, they, the said parties of the second part, the survivors or survivor of them, his heirs, executors or administrators, shall and do grant, convey, assure and deliver all and whatever may remain of the hereby granted premises, after satisfying any such direction that may be so made as aforesaid, of a part only of the said hereby granted premises, unto such person or persons living at the death of the said party of the first part, and being her heir or heirs-at-law, as would be entitled to take the same by descent from her, in case the same was land belonging to her, situate in the State of New York, and if more than one person, then in the proportion in that behalf prescribed by the laws of the said state."

The contemplated marriage took place. Mrs. Riggs died in coverture in 1884, leaving two children surviving, and leaving a will executed in June, 1867, the terms of which, so far as material, are as follows:

" After the payment of all my just debts and funeral and testamentary charges, I direct my said estate to be set apart into two equal shares or portions for the benefit of my two children, George Field, and Mary Rebecca, respectively.

"I direct my executors and trustees hereinafter named, after the payment of said debts and expenses, to take the charge of all my property and estate above-mentioned, and to rent, manage and control the same, or to convert the same or such parts of the same as they shall think the true interests of the beneficiaries of my estate require, into bonds and mortgages or state or national securities, or in any or either of them, and the net income, rents and profits thereof, or as much as may be necessary therefor, I direct to be applied in equal parts to the support, maintenance and education of my two children, George Field and Mary Rebecca, until they shall respectively attain twenty-one years of age, and upon their respectively attaining twenty-one years of age, then to pay over to each child, after so attaining that age, the net income, rents and profits of one-half of said estate for his and her sole use and benefit during their respective lives, and after their deaths respectively, the respective shares of said estate set apart for them as above directed shall go to and belong to their heirs-at-law and next of kin, respectively, in the same manner as though they were respectively absolute owners of the same.

"In case of the death of either of my children before attaining lawful age and without issue, I direct the share set apart for the benefit of the one so dying to be applied to the use and benefit of the survivor in the same manner as is before provided in respect to their own share, but if the one so dying shall leave issue, then such issue shall be entitled to the same.

"In case of the death of both my children before attaining lawful age and without issue, then upon the death of the longest liver, I direct said property to be disposed of as follows:

"Out of the same, I direct that my brothers, M. Augustus and William, or in case of the death of them or either of them, their respective issue shall be paid one thousand dollars each, that is to say, one thousand dollars to M. Augustus, or in case of his death, that sum to his issue, in equal shares, and one thousand dollars to William in the same way. And the

balance I direct to be divided into equal shares amongst my several brothers and sisters, including M. Augustus and William, and in case of the death of any of them leaving issue, then such issue shall take the part the parent would have taken, if living.

" Should my executors and trustees, in the exercise of their best judgment, deem it prudent and for the true interest of my children, after they respectively attain lawful age, to make over to them, or either of them, any part of the principal of the estate before referred to, I authorize them to do so to the extent of the one-half part (or less) of the share set apart for their benefit, respectively, that is to say, to the extent of one-quarter of the whole estate, if both be living, or one-half in case one be dead, and if the conduct or situation of either of my said children, after he or she shall have attained thirty years of age, shall warrant it, and my executors and trustees shall, in the exercise of a sound judgment, deem it for their true interest, then I authorize them to make over to them or either of them, the balance or any portion of said estate set apart for their benefit as above."

*George C. Genet* for appellants. The trustees in the first deed of trust did not take the whole fee. Their estate was limited to collecting the rents, and, therefore, to so much of the fee of the estate as was necessary to enable them to perform this duty. The remainder and the reversion or fee remained in Mrs. Riggs. (*White* v. *Howard*, 46 N. Y. 144; *Douglas* v. *Cruger*, 80 id. 18; *Gilbert* v. *Deshon*, 107 id. 324; 2 Wash. on Real Property, 388, 389; *Curtis* v. *Leavitt*, 15 N. Y. 129; 1 R. S. 729, § 60; *Crook* v. *County of Kings*, 97 N. Y. 446, 451, 453; *Embury* v. *Sheldon*, 68 id. 227; *Stevenson* v. *Lesley*, 70 id. 512; *Cutting* v. *Cutting*, 86 id. 535; *Cook* v. *Platt*, 98 id. 35; *Welch* v. *Bernheimer*, 105 id. 470; *Chamberlain* v. *Taylor*, id. 102.) Where a person has a right to make a trust, he has a right to regulate its nature and extent, even to the reservation of a power of revocation. (*Gilman* v. *McArdle*, 99 N. Y. 457; *Belmont*

v. *O'Brien,* 12 id. 404; Story's Eq. §§ 972, 1036, *b* 1196.)
The whole legal estate was not vested in the trustees, so as to
defeat Mrs. Riggs' right to make this will and create these
trusts. (Story's Eq. § 1380; *Lang* v. *Ropke,* 5 Sand. 363;
*Wadhams* v. *Home Missionary Society,* 2 Kern. 415, 419;
*Strong* v. *Skinner,* 4 Barb. 546; *Corn Ex. Ins. Co.* v.
*Babcock,* 42 N. Y. 638; *Johnston* v. *Spicer,* 107 id. 195.) By
the death of the testatrix the trust ceased, if any ever existed,
and those to whom·she devised her property took it subject
only to the new trusts imposed upon it by her will. (*Clark*
v. *Jaques,* 1 Beav. 36; *Harvey* v. *Harvey,* 1 P. Wms. 125;
*Gruby* v. *Cox,* 1 Ves. 718; *Essex* v. *Atkins,* 14 id. 527, 542;
*White* v. *Howard,* 46 N. Y. 144; *Crooke* v. *County of Kings.*
97 id. 451, 452; *Bailey* v. *Bailey,* 97 id. 460.) The illegality
of a part of a will does not invalidate any other part that can
stand alone. (*Manice* v. *Manice,* 43 N. Y. 785.)

*Ernest H. Crosby* for guardian *ad litem* of Alice Hunt,
infant defendant. The trust estate terminated at the moment
of Mrs. Riggs' death. The trustees could collect rents no
longer. The requirement of a conveyance by the trustees is
immaterial. (*In re Livingston,* 34 N. Y. 555, 567; 2 R. S.
§ 67, art. 2, tit. 2, chap. 1.) The trusts contained in Mrs. Riggs'
will are to be construed as dating from the time of her death.
(2 R. S. tit. 2, art. 2, chap. 1, §§ 61, 62.)

*Franklin B. Lord* for respondents. The heirs would take
as purchasers and not by descent from Mrs. Riggs, and the
limitation in the deed created a remainder and did not reserve
a reversion. (*Bryan* v. *Knickerbocker,* 1 Barb. Ch. 409;
5 Bacon's Abr. 730; *Reading* v. *Roylston,* 2 Ld. Ray. 826;
Gray on Perpetuities, § 112; *Noyes* v. *Blakeman,* 2 Selden,
567; *Yale* v. *Dederer,* 18 N. Y. 267; Reviser's note to § 55,
tit. 2, chap. 1, pt. 2 R. S.; Sugden on Powers [8th Eng. ed.]
214; R. S. [7th ed.] 2191, art. 3, § 105; Id. 2189, art. 3, § 85;
Id. 2176, art. 1, § 14; Id. 2193, art. 3, § 120.) No one can give
another power to do a thing which he cannot do himself, and

a power of appointment created by a deed must be limited to the creation of such estates as the donor of the power could lawfully have created by the deed. (*Salmon* v. *Stuyvesant*, 16 Wend. 324; *Robinson* v. *Hardcastle*, 2 T. R. 251; 4 Kent's Com. 337; *Thomson* v. *Livingston*, 4 Sand. 539; *Morgan* v. *Gronow*, L. R., 16 Eq. 1; *Powell's Trusts*, 37 L. J. Ch. 188.) If an absolute power to appoint by deed or will is given, the donee of the power is practically the owner and can, by an exercise of the power, vest the fee in himself, but if the power is to be exercised only by will, this is not the case. The donee of the power cannot then, during his life, dispose of the property irrevocably. (Gray on Perpetuities, 526, § 534; Marsden on Perpetuities, 250.) A power of this character does not avoid the suspension of the absolute power of alienation. (Gray on Perpetuities, 335, § 527.) The property conveyed by the marriage settlement must be held to be vested in Mrs. Riggs' children by virtue of the limitation in default of appointment. (Gray on Perpetuities, 337, § 534.) Such a deed while, perhaps, vesting the legal title in the trustee, would leave the equitable title in the married woman, and she would be able to dispose of the property without the concurrence of the trustee, unless expressly restrained by the terms of the deed. (*Jacques* v. *Methodist Church*, 17 Johns. 543.)

ANDREWS, J. The question presented on this record is whether the trusts created by the will of Caroline M. Riggs, dated June 27, 1867, are valid within the law of perpetuities, or are void for remoteness. There can be no doubt that if the testatrix, at her death, was the absolute owner of the estate embraced in the trusts, they were valid both in respect of their purposes and duration. In general character they are trusts to apply the rents, profits and income of the trust estate for the support and maintenance of two children of the testatrix during their lives, respectively, with remainder on the death of either, of the share of the one so dying, to his heirs and next of kin, except that in case of the death of either child during minority and without issue, the whole estate is to

be held in trust for the survivor during life, with remainder to his heirs and next of kin; and in case of the death of both children during minority and without issue, then, on the death of the longest liver, the whole estate is given absolutely to designated beneficiaries. Under the will the estate was to vest in absolute ownership, at the furthest, within the compass of the lives of the two children. The share of each child, provided he attained majority, would be liberated from the trust on his death, and the suspension of that share would, in that event, be but for one life only. But if either child should die during minority without issue, there would be a further suspension of the absolute ownership of his\ share during the life of the survivor. As to each share, therefore, there might be a suspension for two lives, but this would be within the limit allowed by law. The statutory limit of suspension of the power of alienation of real estate is two lives in being at the creation of the estate and a minority (1 R. S. 723, § 15), and substantially the same rule applies to limitations of personal property. By another section of the statute (§ 41) it is declared that, " the delivery of the grant where an expectant estate is created by grant, and where it is created by devise, the death of the testator shall be deemed the time of the creation of the estate." There would be no difficulty in sustaining the limitation in the will, if the period of suspension is reckoned from the death of the testatrix.

It is claimed, however, in behalf of the respondents, that the will of Mrs. Riggs was merely an execution of a power of appointment reserved in the trust deed of January 6, 1853, made between the testatrix (then Caroline M. Field), of the first part, and George S. Riggs and others, of the second part, and not an exercise by her, as owner of the property, of the *jus disponendi* incident to ownership, and that the trusts created by the will were void under the statute of powers (1 R. S. 732), for the reason that they were limited upon the lives of persons not in being at the creation of the power, viz., upon the lives of the two children of the testatrix, who, though living when the will was made, were not born until long after

the trust deed creating the power had been executed.   By section 128 of that statute it is declared that "the period during which the absolute right of alienation may be suspended by an instrument in execution of a power shall be computed not from the date of the instrument, but from the time of the creation of the power."   Section 129 declares that "no estate or interest can be given or limited to any person by an instrument in execution of a power, which such person could not be capable of taking under the instrument by which the power was granted."   And by section 105 it is declared, in substance, that a power reserved is subject to the provisions of the article in the same manner as a power granted.

The trust deed was made in contemplation of the marriage of the settlor, Caroline M. Field, with George S. Riggs.   Its leading purposes were to secure to the settlor the income of her property for her own benefit during the marriage, free from the control, disposition, debts or incumbrances of her husband, and to secure the principal to her if she survived her husband, or in case she should die during coverture, to her appointees by will, or if she should make no appointment, to such persons as at her death would be her heirs under the laws of New York, as if all the property was real estate.   To secure these objects the settlor conveyed by the trust deed to the trustees, all her real and personal estate in trust, to receive and apply the rents, issues, profits and income to her use as received, without power of anticipation during her coverture, and in case she survived her coverture, to reconvey the property to her; but in case she should die during coverture, then the trustees are directed to "grant, assure and deliver all and whatever may remain of the hereby granted premises unto such devisee or devisees, in such share or proportion as she, the said party of the first part, by her last will and testament, may direct, which will and testament," the instrument declares, "she, the said party of the first part, is empowered, authorized and enabled to make, and by force of these presents, without any other or further reservation of power in that behalf," etc.   Then follows an

alternative provision that in default of appointment, the prop-
erty shall " go unto such person or persons living at the death
of the said party of the first part, and being her heir or
heirs-at-law, as would be entitled to take the same by descent
from her in case the same was land belonging to her situate
in the state of New York, and if more than one person, then
in the proportion in that behalf prescribed by the laws of
said state.

The trust deed created a valid trust for the joint lives of
Mrs. Riggs and her husband, or during coverture, if she should
become discovert by the death of her husband before her
death. It was one of the express trusts authorized by statute
to receive the rents and profits of lands and apply them to the
use of any person during the life of such person, or for a
shorter period (1 R. S. 728, § 55, subd. 3), and suspended the
power of alienation of the real estate and the absolute owner-
ship of the personal property embraced in the trust, during the
trust term, and although the trust might have terminated
before the expiration of Mrs. Riggs' life by the death of her
husband in her lifetime, the suspension was, in legal effect, a
suspension during a life. Neither she alone, or in conjunction
with the trustees, could abrogate the trust. The statute makes
every conveyance or other act of the trustees of an express
trust in lands, in contravention of the trust, absolutely void,
and, by analogy, the same rule governs trusts of personal prop-
erty. (1 R. S. 730, § 65; *Graff* v. *Bonnett*, 31 N. Y. 9; *Camp-
bell* v. *Foster*, 35 id. 361.) The will further provides, in a
contingency, for the suspension of the power of alienation and
the absolute ownership of at least one-half of the same prop-
erty during the lives of the two children of the testatrix, making
possible a suspension for three lives, if the trust created by the
trust deed and the trusts created by the will are to be read as if
incorporated in a single instrument, viz., the trust deed of 1853.

If Mrs. Riggs remained the absolute owner of the property
after the execution of the trust deed, subject only to the estate
of the trustees for her life, the trusts in the will would be valid.
The reversion in the case supposed would be property which

she could grant or devise, and limit future estates thereon in her discretion, subject only to the restriction that they must vest in absolute ownership within two lives in being at their creation. But Mrs. Riggs was not the absolute owner of an estate in reversion, after the execution of the trust deed. In form the whole estate was conveyed to the trustees. Their title, however, was, in legal effect, limited in point of duration to the trust term. (*Stevenson* v. *Lesley*, 70 N. Y. 512; *Crooke* v. *Co. of Kings*, 97 id. 451.) But the trust deed itself contains a limitation of the estate to other persons than Mrs. Riggs in the event of her death before her husband, and without having made an appointment by will, viz., to such persons living at her death as would take the property as her heirs under the laws of the state of New York by descent, as if it was wholly real estate.

The property transferred by the trust deed was mainly personal, but at the time of Mrs. Riggs' death was mainly real, the trustees having, under the authority of the deed, invested the fund to a large extent in real estate situate in New York and Maryland. The remaindermen, in case the event happened upon which the remainder was limited, would take as purchasers. It was limited to persons who would not be entitled, as of course, to the personal estate, and who might not be entitled to the real estate outside of New York, and whose title would not be subject to the tenancy by the curtesy of the husband, as it would have been if the deed had not been made. (See *Reading* v. *Rawsterne*, 2 Ld. Raymond, 82%.) It is true that the remainder might be defeated by either of two events; the death of Mrs. Riggs before the death of her husband, or by her will made in execution of the power of appointment and taking effect during his life, and it was in fact defeated in the latter way. But Mrs. Riggs could not during the life of her husband affect the limitation in remainder, except in the particular way pointed out, that is by an appointment by will. She could not defeat it by a conveyance *inter vivos*. The quality of absolute property, which enables an owner to dis-

pose of it in any of the forms known to the law, did not attach
to the interest remaining in Mrs. Riggs after the execution of
the trust deed. What she did have was a reversion depending
on the event of her outliving her husband, which has been
defeated by her death, and in addition a right to appoint by
will only in case of her death during coverture. It is a
doctrine of the common law that an unrestricted power to
appoint a fee in lands by deed or will is equivalent to owner-
ship, because the donee of the power may at any time, by
exercising the power, acquire an absolute estate, and for this
reason the question of perpetuity arising upon limitations made
by the donee of such a power is determined with reference to the
date of the execution of the power and not of the instrument
creating it. (Sugden on Powers, vol. 1, page 469 *et seq.*) But
the general rule is expressed by Chancellor KENT in his Com-
mentaries (Vol. 4, page 337): "An estate created by the exe-
cution of a power takes effect in the same manner as if it had
been created by the deed which raised the power." The
power of disposition reserved by Mrs. Riggs in the trust deed
was not an absolute power equivalent to absolute ownership.
It was restricted to a disposition by will. The statute of
powers (§ 85) defines an absolute power to be one by which
the grantee is enabled in his lifetime to dispose of the entire
fee for his own benefit. The power in this case, under the
definition in our statute, was general, but not absolute. (*Cut-
ting* v. *Cutting*, 86 N. Y. 535.)

We think the validity of the suspension in the will of
Mrs. Riggs is to be determined by the test whether it would
be valid if it had been part of the limitation in the trust deed
and had been inserted therein at the time the deed was executed.
This seems to be the rule of our statute and it is the rule of
the common law in respect to appointments under special
powers, but not as to appointments under general or absolute
powers. Mr. Jarman, in referring to this subject, says that
the reason that this test is not applicable to appointments
under general powers is that such powers are, in point of
alienation equivalent to actual ownership, but he adds: "This

reason fails when the power, though general in its objects, is to be exercised by will only. In such a case the power of disposition is suspended during the life of the donee, and appointments made by virtue of it are, therefore, to be tested in the same way as appointments under a special power." (1 Jar. [5th ed.] 291.) The case of *Re Powell's Trusts* (39 L. J. Ch. 188), decided by JAMES, V. C., cited by Mr. Jarman, fully sustains the text. The case of *Rouse* v. *Jackson* (L. R. 29, Ch. Div. 521) seems to be adverse, but it proceeded, I think, on a failure to discriminate between a general and unrestricted power and one to be exercised by *will* only, and this is the view taken by Mr. Gray in his work on Perpetuities (§ 526); see, also, Marsden on Perpetuities (p. 250). Construing the trusts in the will of Mrs. Riggs as if created at the date of the trust deed of 1853, they are invalid as they provide for a possible suspension of the power of alienation of real estate and the absolute ownership of personal property for three lives, and for the additional reasons that the two children, upon whose lives the trusts in the will are limited, were not in being when the trust deed was executed, and could not have taken such an estate as was limited under the will, if it had been limited in the same manner in the deed of 1853.

The argument is urged that, conceding that the absolute power of alienation of the trust estate was suspended during the coverture of Mrs. Riggs under the general rule, by reason of the disability imposed by the statute upon the trustees to do any act or make any conveyance in contravention of the trust, this disability was removed as to property held in trust for married women, by the married woman's act of 1848, as amended by the second section of the act of 1849. That section provides that any person who may hold any real or personal property as trustee for any married woman may, on her written request, convey the same to her, or the rents, issues or profits thereof, for her " sole and separate use and benefit," but it is made a condition to such conveyance that the request shall be accompanied by a certificate of a justice of the Supreme Court that " he has examined the condition

and situation of the property and made due inquiry into the capacity of the married woman to manage and conduct the same." This statute does not, we think, answer the difficulty. Assuming that the trust in this case was within the statute of 1849, the disability imposed upon a trustee of an express trust by the general statute, is not removed in the case of a trustee for a married woman, except conditionally, the condition being the judicial action of a judge certifying, after an examination of the facts, that it is a proper case for the exercise of the power conferred by the act. In substance, the statute confers a power dependent upon the consent of a judge of the court. Until such consent is obtained the suspension continues. It could not be terminated by the conjoint action of the trustees and Mrs. Riggs. The general test of alienability is that there are persons in being who can make a perfect title. This cannot be predicated, we think, of a situation where judicial action, which may or may not be obtained, is requisite to authorize a conveyance. (See Gray on Perpetuities, § 527.) But, independently of this consideration, we think the statute was intended to apply merely to nominal trusts to secure a married woman in the enjoyment of her separate estate, where this was the sole object of the trust. The statute in such a case permits the trust to be abrogated and the legal title to be vested in the beneficial owner, the separation of the legal and equitable estates no longer serving under our statutes any useful purpose. It certainly cannot be construed to prevent a parent, relative or other person from creating an express trust to apply the rents and profits of the trust estate for the benefit of a married daughter, niece or other female without subjecting it to the risk of destruction by the conjoint action of the trustee, the beneficiary and the court. The trust created by the deed of 1853 was not a mere formal or passive trust. The title to the property was vested in the trustees. It was strictly a trust under the statute. The deed not only declared the interest of Mrs. Riggs in the trust property, but limited thereon future contingent estates to take effect on her death during coverture, unless defeated by her appointment by will. This trust was

not, we think, within the purview of the statute of 1849. If a conveyance had been made to her under that statute, the property would not be held " for her sole and separate use and benefit," because the contingent estate in remainder could not in that way be defeated. (*Bryan* v. *Knicker-backer,* 1 Barb. Ch. 409 ; *Wright* v. *Tallmadge,* 15 N. Y. 315.) We think the court below properly construed the will, and the judgment should, therefore, be affirmed.

EARL, FINCH and PECKHAM, JJ., concur ; DANFORTH and GRAY, JJ., dissent on the ground that the fee did not pass to the trustees by the deed. They took no greater estate under it than was sufficient for them to perform the duties stated. The remainder, or reversion, remained in the grantor. The will was not in the execution of any power, and there is, therefore, no contravention of the statute against unlawful perpetuities in the trust provisions of the will. RUGER, Ch. J., does not vote.

Judgment affirmed.