Guaranty Trust Company of New York, Individually and as Trustee under a Deed of Trust Made by Angier B. Duke, Respondent, *v.* E. Bayard Halsted et al., as Executors of Angier B. Duke, Deceased, et al., Respondents, and Angier B. Duke, Jr., et al., Appellants.

**Trust — income — direction in deed of trust that on death of grantor surplus income shall be paid to those entitled thereto under will or if no will to next of kin — such income not an asset of estate of grantor — duty rests upon trustee to pay income to persons designated — failure to refer to trust in will — designation may nevertheless be present if will purports to pass all personal property — intent not to execute power appears by implication where dispositions under will are inapplicable to subject thereof — failure of will as instrument of designation — surplus income payable by trustee to next of kin.**

1. Where a trust indenture provides that surplus income, after the death of the grantor of the trust, shall be paid " in quarterly installments so long as this trust shall continue " to " those who may be entitled thereto by virtue of the will of said grantor or in case he leave no such will " to his next of kin, such surplus income is not an asset of the estate of the grantor payable to the executors for accumu-

lation or disbursement but the right thereto passes by the trust deed and the duty rests upon the trustee to pay such income quarterly to those designated by the will or to the next of kin. (*Genet* v. *Hunt*, 113 N. Y. 158; *McComb* v. *Title Guarantee & Trust Co.*, 36 Misc. Rep. 370; affd., *sub nom. Herzog* v. *Title Guarantee & Trust Co.*, 210 N. Y. 531, followed; *Doctor* v. *Hughes*, 225 N. Y. 305, distinguished.)

2. Although the will of such a grantor makes no reference to the trust and in terms makes no designation of beneficiaries to take thereunder, nevertheless designation may be present in the will by virtue of the terms of section 18 of the Personal Property Law (Cons. Laws, ch. 41), providing that personal property embraced in a power to bequeath passes by a will purporting to pass all personal property of testator unless the intent that the will shall not operate as an execution of the power appears " expressly or by necessary implication." If, however, the dispositions made by testator of his property are, by their very nature inapplicable to the subject of the power, the intent of the testator not to execute the power will " by necessary implication " appear and the power will fail of exercise.

3. Where, therefore, an examination of the will of such a grantor discloses that the allotment of specific securities and properties to particular legatees and the devotion of such properties to specific purposes have been committed by the testator into the hands of his executors so that any appointment of beneficiaries to receive the trust income must be made through an allotment by the executors within the terms of the will and it appears that the surplus trust income cannot be adjusted to the testamentary dispositions without doing violence to the provisions of the trust indenture and that the will as an instrument of designation supplementing the trust indenture is clearly unsuited to the task, it must be held that the testator made no appointment or disposition and intended to make none which was consonant with the power reserved; that the will fails as an instrument of designation and that the trustee under the trust indenture should pay the surplus income to the next of kin of the grantor.

*Guaranty Trust Co.* v. *Halsted,* 217 App. Div. 791, reversed.

(Argued May 20, 1927; decided July 20, 1927.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered August 17, 1926, unanimously affirming a judgment of Special Term judicially settling

the accounts of the trustee under a trust indenture made by Angier B. Duke, deceased.

*Charles K. Beekman* and *William L. Bainton* for appellants. Assuming the grantor intended by his will to bequeath the surplus income, such bequest was invalid as it created an unlawful accumulation. (*Thorn v. DeBreteuil,* 179 N. Y. 64; *Hascall v. King,* 162 N. Y. 134; *Matter of Chapman,* 32 Misc. Rep. 187; 59 App. Div. 624; 167 N. Y. 619; *Matter of Jenkins,* 132 App. Div. 339; *Lowenhaupt v. Stanisics,* 95 App. Div. 171; *Hafner v. Hafner,* 62 App. Div. 316; 171 N. Y. 633; *Matter of Tracy,* 179 N. Y. 501; *Herzig v. Herzig,* 140 App. Div. 514.) The only right which the testator had under the trust indenture was to nominate in his will the persons who would be entitled to receive the surplus income, and the testator's will does not, nor did the testator intend thereby to, dispose of the " surplus income." (*Matter of Sheldon's Will,* 16 N. Y. Supp. 454; *Matter of Budlong,* 126 N. Y. 423; *Matter of Tamargo,* 220 N. Y. 225; *Quinn v. Hardenbrook,* 54 N. Y. 83; *Genet v. Hunt,* 113 N. Y. 158; *Embury v. Sheldon,* 68 N. Y. 227; *Stevenson v. Lesley,* 70 N. Y. 512; *Crooke v. County of Kings,* 97 N. Y. 446; *Knowlton v. Atkins,* 134 N. Y. 313; *Farmers' Loan & Trust Co. v. Kip,* 192 N. Y. 266,)

*Forrest Hyde, William R. Perkins, H. Laurence Brooke* and *Philip M. Payne* for executors, respondents. The right to receive the surplus income is a beneficial interest or estate in the trust created by the trust indenture separate and distinct from the surplus income which may accrue thereon. It is this right which constitutes the capital asset of the estate in question here. (*Pray v. Hegeman,* 92 N. Y. 508; *Cazzani v. Title Guarantee & Trust Co.,* 175 App. Div. 369; *Matter of Bendit,* 214 App. Div. 446.) It is immaterial whether Duke owned the right to the surplus income by way of reversion or had

as to it a general power of appointment by will. (*Doctor v. Hughes*, 225 N. Y. 306; *N. Y. Life Ins. & Trust Co. v. Livingston*, 133 N. Y. 125; *N. Y. Life Ins. & Trust Co. v. Carey*, 191 N. Y. 33; *Livingston v. N. Y. Life Ins. & Trust Co.*, 36 N. Y. S. R. 566; 151 N. Y. 667; *Montague v. Curtis*, 110 Misc. Rep. 717; 191 App. Div. 904.) The will does include and pass the right to the surplus income. (*Floyd v. Carow*, 88 N. Y. 560; *Lamb v. Lamb*, 131 N. Y. 227; *Matter of Miner*, 146 N. Y. 121; *Matter of Kelsey*, 115 Misc. Rep. 577; 200 App. Div. 908; 234 N. Y. 511; *Lockwood v. Mildeberger*, 159 N. Y. 181; *Kilber v. Miller*, 57 Hun, 14; 141 N. Y. 571; *Hutton v. Benkard*, 92 N. Y. 295; *N. Y. Life Ins. & T. Co. v. Livingston*, 133 N. Y. 125; *McLean v. McLean*, 174 App. Div. 152; 223 N. Y. 695; *Hirsch v. Bucki*, 162 App. Div. 659; *Waterman v. N. Y. Life Ins. & Trust Co.*, 237 N. Y. 293; *Matter of Franklin Trust Co.*, 103 Misc. Rep. 143.) The effect of the will was merely to substitute successive beneficiaries in the stead of Duke for a portion of the income of an admittedly valid trust — a perfectly legal thing to do. (*McComb v. Title Guarantee & Trust Co.*, 36 Misc. Rep. 370; 70 App. Div. 618; *Herzog v. Title Guarantee & Trust Co.*, 210 N. Y. 531; *Gilman v. Reddington*, 24 N. Y. 9; *Schermerhorn v. Cotting*, 131 N. Y. 48; *Woodgate v. Fleet*, 64 N. Y. 566; *Underwood v. Curtis*, 127 N. Y. 523; *Buchanan v. Little*, 154 N. Y. 147; *Matter of Allen*, 111 Misc. Rep. 93; 202 App. Div. 810; 236 N. Y. 503; *Matter of Smission*, 79 N. J. Eq. 233.) The will does not effect an illegal accumulation of the surplus income. (*Manice v. Manice*, 43 N. Y. 303; *Matter of Stevens*, 187 N. Y. 471; *McLouth v. Hunt*, 154 N. Y. 179; *Kemp v. Macready*, 165 App. Div. 124; *Matter of Fanoni*, 88 Misc. Rep. 442; *Matter of Chapman*, 32 Misc. Rep. 187; 59 App. Div. 624; 167 N. Y. 619; *Matter of James*, 146 N. Y. 78; *Frankel v. Farmers' Loan & Trust Co.*, 152 App. Div. 58; 209 N. Y. 553; *Matter of Yates*, 99 N. Y. 94.) Had the testator directed an accumulation of the surplus

income only such direction would be void. The will would still be a valid disposition of the right to such income entitling the life and conditional tenants to receive and enjoy the whole of such income. (*Hillen* v. *Iselin,* 144 N. Y. 365; *Matter of Rogers,* 22 App. Div. 428; 161 N. Y. 108; *Barbour* v. *deForest,* 95 N. Y. 13; *Matter of Hoyt,* 116 App. Div. 217; 189 N. Y. 511; *Matter of Megrue,* 170 App. Div. 653; 217 N. Y. 623; *Matter of Kohler,* 231 N. Y. 353.)

*C. Alexander Capron* and *Ramsey Clayton* for respondent. The right to receive the surplus income after the death of Angier B. Duke is an asset of his estate. (*Matter of Viele,* 35 App. Div. 211; *Montanye* v. *Montanye,* 29 App. Div. 377; *Matter of Hawes,* 162 App. Div. 173; *Doctor* v. *Hughes,* 225 N. Y. 305; *Whittemore* v. *Equitable Trust Co.,* 162 App. Div. 607; *Hoskin* v. *Long Island Loan & Trust Co.,* 139 App. Div. 258; 203 N. Y. 588; *Genet* v. *Hunt,* 113 N. Y. 158.)   Since the right to receive the surplus income was an asset of the estate of Angier B. Duke, no question concerning unlawful accumulations is presented. (*Howe* v. *Earl of Dartmouth,* 7 Vesey, 137; *Cairns* v. *Chaubert,* 9 Paige Ch. 160; *Livingston* v. *Tucker,* 107 N. Y. 549; *Matter of Hoyt,* 160 N. Y. 607.)   If Angier B. Duke only had a power of appointment of the right to receive the surplus income accruing after his death, nevertheless his will effected a valid disposition thereof, and the direction to pay such income to his executors was appropriate. (*Matter of Franklin Trust Co.,* 103 Misc. Rep. 143; *Crook* v. *County of Kings,* 97 N. Y. 421; *Bailey* v. *Bailey,* 97 N. Y. 460.)   The right to receive the surplus income is a capital asset, and the executors, trustee and legal life tenants should preserve the value thereof for those who may be entitled thereto upon the termination of the life estates. (*Howe* v. *Earl of Dartmouth,* 7 Vesey, 137; *Cairns* v. *Chaubert,* 9 Paige Ch. 160; *Matter of Elsner,* 210 App. Div. 575; *McDonald* v. *Irvine,*

8 Ch. Div. 101; *Matter of James,* 146 N. Y. 78; *Farmers'
Loan & Trust Co.* v. *Frankel,* 152 App. Div. 58; 209 N. Y.
553; *Porter* v. *Bradley,* 5 Ch. Div. 542; *Crawley* v. *Crawley,*
7 Sim. 427.)

*Charles Caldwell* for Benjamin N. Duke et al., respond-
ents. A direction in a will to appraise the estate will
be construed as merely a step in the administration and
not a capitalization which is to be maintained out of
income for remaindermen. (*Manice* v. *Manice,* 43 N. Y.
303; *Brainerd* v. *Birdsall,* 2 Dem. Surr. 331.) The
provisions of the will show a clear intent that the life
tenants should not use the income to maintain corpus for
the benefit of remaindermen. (*Frankel* v. *Farmers' Loan
& Trust Co.,* 152 App. Div. 58; 209 N. Y. 553; *Matter of
Yates,* 99 N. Y. 94; *Matter of Stevens,* 187 N. Y. 471;
*McLouth* v. *Hunt,* 154 N. Y. 179; *Matter of Fanoni,* 88
Misc. Rep. 442; 169 App. Div. 958; 216 N. Y. 640;
*Kemp* v. *Macready,* 165 App. Div. 124; *Gray* v. *Siggers,*
L. R., 15 Ch. Div. 74; *Simpson* v. *Lester,* 4 Jur. [N. S.]
1269.) Duke was disposing of a reversionary interest
which he had retained and did so in an apt and legal way.
(*Doctor* v. *Hughes,* 225 N. Y. 306; *New York Life Ins.
& Trust Co.* v. *Livingston,* 133 N. Y. 125; *New York Life
Ins. & Trust Co.* v. *Cary,* 191 N. Y. 33; *Livingston* v.
*New York Life Ins. & Trust Co.,* 36 N. Y. S. R. 566;
*Montague* v. *Curtis,* 110 Misc. Rep. 717; 191 App. Div.
904; *Goodwin* v. *Broadway Trust Co.,* 87 Misc. Rep. 130;
*Whittemore* v. *Equitable Trust Co.,* 162 App. Div. 607;
*Cruger* v. *Union Trust Co.,* 173 App. Div. 797.)

KELLOGG, J. This action was brought by a trustee
under a trust indenture for the purpose of procuring a
decree determining the persons to whom certain surplus
earnings of the trust fund should be paid. The trust
indenture was executed on July 28th, 1919, by one Angier
B. Duke, against whom an action of divorce brought by

his wife, Cordelia B. Duke, was then pending. Husband and wife had entered into an agreement of separation whereby the latter had released to the former all her rights, present and future, in and to the real and personal property of the former. In consideration of this agreement the trust indenture was executed. By it Angier B. Duke transferred to the plaintiff, as trustee, certain specified securities.

The trust indenture required the trustee to collect and receive the income from the securities transferred and directed that, after deducting expenses of administration, it should " pay, apply and distribute the residue of the same " as provided in certain clauses of the indenture designated (A), (B), (C) and (D).

Clause (A) provided that the trustee should make payments as follows: " To the said Cordelia B. Duke the sum of Twenty thousand dollars a year in equal monthly installments so long as she shall live; or if the grantor or the said Cordelia B. Duke shall hereafter obtain a decree of divorce one from the other and the said Cordelia B. Duke shall thereafter remarry, thereafter the sum of Ten thousand dollars a year, in equal monthly installments so long as she shall live."

Clause (B) provided that the trustee should make further payments as follows: " To each of said children, Angier B. Duke, Jr., and Anthony Newton Duke, for his maintenance, education and support, the sum of Five thousand dollars in equal monthly installments so long as he shall live and this trust shall continue; " if either of said children should die before the termination of the trust, then to the surviving issue of such child for their maintenance, education and support, so long as the trust should continue; if either of said children should die without issue before the termination of the trust, then the said five thousand dollars of income to the surviving child or his issue.

Clause (C) provided that the trustee should make the

payments to the wife and children free and clear from all taxes.

Clause (D) provided that all income not distributed as provided in clauses (A), (B) and (C) during the continuation of the trust should "be paid annually, in quarterly installments so long as this trust shall continue to said grantor, or in case he dies before the termination of this trust, after his death to those who may be entitled thereto by virtue of the will of said grantor, or in case he leave no such will, to those who may at the time of his death be his next of kin under and in accordance with the then statutes of distribution of the State of New York."

The indenture also provided that the trust should continue during the lives of Angier B. Duke and Cordelia B. Duke; that it should terminate upon the death of the survivor of them; that thereupon the trustee should divide and distribute all the properties then held by it in equal shares between the two children, if then surviving; that in case either of the children should then be dead the share of such child should become payable to his issue *per stirpes;* that if there were no such issue such shares should become payable to the surviving child or his issue then living; that if there were no surviving child the trustee should distribute the properties held among the next of kin of the grantor.

On October 24th, 1921, the marriage between Angier B. Duke and Cordelia B. Duke was dissolved by a decree of divorce duly obtained by the plaintiff in the action above referred to. On September 3d, 1923, Angier B. Duke died, leaving as his only heirs at law and next of kin Angier B. Duke, Jr., and Anthony Newton Duke, the two children named in the trust agreement, the former being then of the age of eight years and the latter of the age of five years. He also left him surviving his father, Benjamin N. Duke; his mother, Sarah B. Duke; and his sister, Mary Duke Biddle. On April 24th, 1924, Cordelia

B. Duke married one Thomas Robinson. Angier B. Duke left a will, dated December 26th, 1922, which has been duly probated.

The will of Angier B. Duke made certain specific bequests to legatees. It then directed that the executors cause an inventory and appraisal to be made of " all the property (which shall include all rights, powers and interests in, over and concerning property of every kind and wheresoever situated) which I may own at my death, setting forth every item therein at what is, in their judgment, its then cash value." Whatever might remain of the property thus inventoried and appraised " after satisfying and performing the other items of this will, paying my just debts and defraying the costs, the charges and expenses of administering my estate, including therein all taxes legally assessed against the same," was expressly denominated by the testator " my residuary estate."

The residuary estate thus to be constituted was devised and bequeathed by the will as follows:

(a) One-fourth in value to the testator's mother for life, remainder in fee to his sister, but if his sister left no issue living at her death, to his then heirs according to the statutes then governing the descent of real estate in New York;

(b) One-fourth in value to the testator's sister, but if she left no issue living at her death, then to his mother for life and at his mother's death or at his sister's death without issue then living, if his mother be not then alive, to his then heirs according to the statutes then governing the descent of real estate in New York;

" (c) One-fourth in value of said residuary estate to The Farmers' Loan and Trust Company, in trust, however, for the uses and purposes following: Said Trustee shall collect and receive the income, revenues and profits thereof, and shall pay, apply and distribute the same to and for the support, education and maintenance of my son, Angier B. Duke, Jr., so long as he shall live, and after

his death *per capita* in equal portions for the support, education and maintenance of his lineal descendants so long as this Trust may thereafter continue. Such payments, applications and distributions during the minority of my said son, Angier B. Duke, Jr., shall be in such amounts and at such times as in the uncontrolled discretion of said Trustee may be by it deemed necessary and advantageous for such purposes, it being my intention that the Trustee may, in its discretion, withhold from my said son, Angier B. Duke, Jr., during his minority the whole or any part of such income, revenues and profits, and accumulate the same for his benefit. Upon my said son attaining his majority all said accumulations shall be at once paid to him. In case my said son dies before attaining his majority all such accumulations shall become a part of his estate and shall be paid, applied and distributed accordingly. Upon the death of both of my sons, Angier B. Duke, Jr., and Anthony Newton Duke, or upon the death of said Angier B. Duke, Jr., and of all his lineal descendants (if such there shall be), whichever shall first occur, this Trust shall terminate and all the property then held in said Trust, except such accumulations, shall be paid and distributed *per capita* to and among the lineal descendants of my said son, Angier B. Duke, Jr., then living, and in case there be no such lineal descendants then living, then in all respects in accordance with the statutes of the State of New York governing the descent of real property to and among those who by said statutes would have inherited real property then owned by me in said State had I died intestate at the time of the termination of this Trust."

(d) One-fourth in value to the Farmers' Loan and Trust Company upon a trust for Anthony Newton Duke and his lineal descendants, expressed in words identical with the words of the trust last above given, except that the name Anthony Newton Duke appears in place of the name Angier B. Duke, Jr., and *vice versa.*

From the very first, the income upon the securities turned over to the plaintiff, as trustee under the trust indenture, exceeded the amounts periodically required to be paid to Cordelia B. Duke and the two children, Angier B. Duke, Jr., and Anthony Newton Duke. During the life of the settlor of the trust, the surplus income, as provided in the indenture, was paid to him by the trustee. Since the death of the settlor on September 3d, 1923, the surplus income has not been disbursed. On April 24th, 1924, when Cordelia B. Duke remarried, the amount payable to her, under the terms of the trust, fell from $20,000 to $10,000 per annum and the surplus income from the trust securities was thereby correspondingly increased. Since such time it has been approximately $28,000 per annum. Cordelia B. Duke, at whose death the trust term was to end, at the time of the death of the settlor was but twenty-five years of age. At that time and before her remarriage, the capitalized value of the surplus income payable during the remainder of her life was, according to the estimates given, $282,809.91. Its capitalized value since the remarriage has been estimated to be $432,719.97. The trustee under the trust indenture now seeks instructions as to the disposition of the surplus income received since the death of Angier B. Duke, and to be received by it in the future prior to the death of Cordelia B. Duke.

The trust indenture provided, as we have stated above, that the surplus income, after the death of the grantor of the trust, should be " paid annually, in quarterly installments, so long as this trust shall continue " to " those who may be entitled thereto by virtue of the will of said grantor " or " in case he leave no *such* will, to those who may be at the time of his death his next of kin under and in accordance with the then statutes of distribution of the State of New York." In default of " such will," Angier B. Duke, Jr., and Anthony Newton Duke, the grantor's only children, would be entitled to

the surplus income, since they would constitute his sole " next of kin."

The first question we have to determine is whether or not, if " such will " has been made, *i. e.*, a will naming persons entitled to the surplus income, such persons would take under the trust indenture or under the will. The case of *Genet* v. *Hunt* (113 N. Y. 158) seems conclusive upon the point. In that case a woman, who was about to marry, conveyed property to trustees. The trustees were directed to pay the income of the trust estate to the settlor during coverture; if she survived her husband, to pay her the principal fund; if she did not survive her husband, then to make payments as she might direct by her last will. The settlor died during coverture leaving two children named " George " and " Mary." By her last will she directed her executors to divide her property into two equal parts; to pay to George the income on the half set apart for him, during life; to pay to Mary the income on the half set apart for her, during life; at the death of either child to pay the principal to the heirs and next of kin of such child; if either child should die without issue before attaining lawful age, then to the survivor upon the same terms as his own share. It is apparent that, if the remainder was limited to pass by the trust deed, the absolute power of alienation might unlawfully have been suspended for more than two lives, viz., the lives of the settlor, of George, and of Mary. On the other hand, if it was limited to pass by the will, the power would have been suspended at the most for the lives of the two children. It was held that the source of the title was the trust indenture, not the will; that the validity of the suspension provided in the will was to be determined by the test of the validity to be applied in case the provisions of the will had been incorporated in the trust deed; that, so construed, the trust created an unlawful suspension and the gift of the remainder was invalid.

Equally convincing is the case of *McComb* v. *Title Guarantee & Trust Company* (36 Misc. Rep. 370; affd., *sub nomine Herzog* v. *Title Guarantee & Trust Company*, 210 N. Y. 531). In that case real property was deeded to a trustee in trust to pay the net income to the grantor during life; after his death to pay all net income to such persons as might be designated in the last will of the grantor, or, in default of a will, to his widow and next of kin; upon the termination of the trust, which was limited to the lives of two of his children, to distribute the estate as provided in the will, or in default of a will, to the grantor's heirs at law. The will devised such real property, subject to the trust deed, to trustees to dispose of the same as provided in the residuary clause of the will. That clause provided that the trustees, during the lives of the testator's two children, should receive the rents and profits of his estate, pay an annuity to the widow, pay the remaining net income to the children, and, at the termination of the trust, distribute the estate to the children, share and share alike, or to their respective heirs. It was held that the children became entitled to the trust income by virtue of the trust deed and that the will was effective merely to designate the beneficiaries under such deed. The court said that " it becomes the duty of the trustee named in the trust deed to pay over the net income in equal shares to the testator's children, who will thus receive it, not by virtue of the will, but by virtue of the trust deed in which the gift itself was contained." The decision at Special Term was affirmed by this court, which quoted with approval the statement above recited and added the following: " This is a proper interpretation of the will and deed and accordingly the net income should be paid directly to the beneficiaries and not to the trustees under the will to be distributed by them."

The case of *Doctor* v. *Hughes* (225 N. Y. 305), much relied upon by the respondents, holds nothing to the

contrary. There the owner of property deeded the same to trustees to pay the rents and profits thereof to the grantor for life and after his death to convey the premises to the heirs at law of the grantor. The question in that case was whether the real estate would pass to the heirs at law by descent or by purchase. It was held that the trustees took only a life estate; that the grantor retained the fee; that the interest of the grantor would pass to his heirs as a reversion by operation of law, not as a remainder by virtue of the deed. The court merely applied the ancient rule that " a reservation to the heirs of the grantor is equivalent to the reservation of a reversion to the grantor himself." In our case the question is not whether the surplus income passes by descent or by purchase; the question is whether it passes by purchase under the trust deed or by purchase under the will. The provisions of section 102, Real Property Law (Cons. Laws, ch. 50), relied upon in the *Hughes* case, have no application here. Those provisions are as follows: " Where an express trust is created, every legal estate and interest not embraced in the trust, and not otherwise disposed of, shall remain in or revert to, the person creating the trust or his heirs." In the *Hughes* case the estate, in relation to the devolution of which the decision was made, was not " embraced in the trust." In our case it is distinctly so embraced. Legal title to the securities, giving rise to surplus income, remained in the trustee after the death of the settlor, and the duty to collect and pay out surplus income still rests upon the trustee.

The *Genet* and *McComb* cases conclusively establish that the surplus income in question is not an asset of the estate of Angier B. Duke; that the right thereto passes by the trust deed and not by the will; that such income is not payable to the executors under the will for accumulation or disbursement; that the will can operate only as a designation of the beneficiaries of the trust; that the duty rests upon the trustee itself to pay over surplus income

1927.]          Opinion, per KELLOGG, J.          [245 N. Y. 447]

" in quarterly installments to those who may be entitled thereto by virtue of the will," or in default of " such will " to make payment to the next of kin of the settlor of the trust.

The will makes no reference to the trust. It in terms makes no designation of beneficiaries to take thereunder. Nevertheless, designation may be present in the will by virtue of the terms of section 18 of the Personal Property Law (Cons. Laws, ch. 41), which are as follows: " Personal property embraced in a power to bequeath, passes by a will or testament purporting to pass all the personal property of the testator; unless the intent, that the will or testament shall not operate as an execution of the power, appears therein either expressly or by necessary implication." The will in question does purport to pass all the personal property of the testator, including " all rights, powers and interests in " property owned by him. However, if the testator made dispositions of his property which by their very nature are inapplicable to the subject of the power, the intent of the testator not to execute the power would " by necessary implication " appear and the power would fail of exercise.

The testator did not himself determine the persons to whom specific securities or properties should pass, and thus, by the indirect method of bequeathing to particular persons properties necessarily inclusive of the subject of the power, accomplish a designation of beneficiaries entitled to the surplus trust income. The allotment of specific securities and properties to particular legatees and the devotion of such properties to specific purposes was committed by the testator into the hands of his executors. Thus, if the testator made an appointment of beneficiaries to receive the trust income, he may be said to have done so only through an allotment to be made by his executors within the terms of the will. The question is, therefore, May the executors, in accordance with the terms of the will, make a disposition of the trust

income, or direct a disposition to be made thereof, which will conform with the terms of the trust indenture, the general purposes of the will, and with the statute law which may be applicable.

The executors were authorized by the will, after the payment of certain specific legacies, to apply to the payment of the testator's debts such part of his remaining assets as might be necessary. May the executors direct the trustee under the trust indenture to apply surplus income to that end? It seems clear that the testator could not have contemplated such a disposition of trust income. He could not well have supposed that his creditors would consent to deferred payments of their claims, in quarterly installments through a series of years, when the estate was otherwise amply supplied with funds to make full and immediate satisfaction. Manifestly the testator could not have intended the trust income to be so used. Moreover, it would seem to be clear that the devotion of such income to that purpose would accomplish an unlawful accumulation. An unlawful accumulation occurs not only when income is added directly to capital, but when capital is indirectly increased by the application of income to debts which otherwise diminish capital. (*Hascall* v. *King*, 162 N. Y. 134.)

We have shown that the executors were directed to cause an appraisal to be made of every asset of the estate; that the securities so appraised, after specific legacies and debts were paid, were to constitute the testator's residuary estate; that the estate so constituted was to be divided into four parts; that " one-fourth in value " was bequeathed to the testator's mother for life, with a remainder to his sister and others thereafter; that " one-fourth in value " was bequeathed to his sister, with a remainder to his mother and others thereafter; that " one-fourth in value " was bequeathed to a trustee for the benefit of Angier B. Duke, Jr., during his life, and thereafter in *per capita* shares for the benefit of the lineal

descendants of Angier B. Duke, Jr., during the continuance of the trust, with the remainder in fee to such descendants; that " one-fourth in value " was bequeathed to a trustee in trust, upon similar terms, for the benefit of Anthony Newton Duke and his descendants.

May the executors, in apportioning one-fourth of the assets to the satisfaction of any one of the four bequests, include in the fund apportioned the right to surplus trust income at the capitalized valuation of $432,719.97? May they direct the trustees under the trust indenture to pay out the surplus income in accordance with the terms of one of the bequests and thereby accomplish a suitable designation of the persons named in such bequest as the beneficiaries entitled to surplus trust income?   Under the terms of the trust indenture the payment of surplus trust income was to continue during the life of Cordelia B. Duke, and at her death to cease.   In spite of actuarial computations, Cordelia B. Duke might die immediately following the making of the apportionment.   In that event the set of beneficiaries designated to receive the surplus income would thereafter enjoy a principal fund less by $432,719.97 than that to be enjoyed by the other three sets.   Moreover, the value of the right to surplus income, regarded as an asset of the estate, would substantially diminish during each year that Cordelia B. Duke continued to live, accordingly as her prospects of life grew less with advancing years.   In the instance of each of the four bequests, therefore, owing to the wasting nature of the asset, regarded as an asset of the estate, those in remainder would take a principal fund of a value far less than the testator intended they should have, while the first takers, by their enjoyment of the full surplus income, would destroy in part or in whole the value of the right thereto, considered as a capital asset. This would be true whether the executors directed the trustee to apply the surplus income upon one of the four bequests, to the exclusion of the other three, or equally

[245 N. Y. 447]        Opinion, per KELLOGG, J.        [July,

upon the four bequests. Moreover, the testator's directions were that " one-fourth in value " of his estate be paid either through a testamentary trustee or directly, to one of four named persons, for life. If the right to surplus income, at the valuation of $432,719.97, were to enter into such " one-fourth," any life taker, receiving, from the trustee under the indenture, the entire surplus income, would take a sum in excess of the use of $432,719.97, and, therefore, in excess of the income on one-fourth of the estate, as directed by the testator.

The testamentary trustee urges that, in order to maintain a proper balance between the four sets of beneficiaries, as well as between the first taker and the remaindermen of any one set, sufficient sums should be reserved from surplus income to make good the annual loss in value of the *right* to such income, regarded as a capital asset. Where an asset of an estate is of a wasting character, an asset " which may be consumed in the using," such a method of amortization, in the absence of a testator's direction to the contrary, is ordinarily employed. (*Howe* v. *Earl of Dartmouth,* 7 Vesey's Ch. Rep. 137; *Cairns* v. *Chaubert,* 9 Paige Ch. 160; *Matter of Elsner,* 210 App. Div. 575.) Doubtless no illegal accumulation results, since the apparent income is used not to increase but to preserve the capital fund, and since, moreover, the apparent income, to the extent that its disbursement may impair capital, in itself partakes of the nature of principal. There are, however, compelling reasons why no amortization may be had in the case at bar. In the first place it is basically unsound to regard the *right* to surplus income as a capital asset of the estate of Angier B. Duke. As we have shown, title to such income passes by the trust indenture and not by the will, so that the right thereto is not an asset of the estate over which the executors have control. The income may not be paid to the executors; it must be paid directly by the trustee to the beneficiaries named by the will, if any.

(*Herzog* v. *Title Guarantee & Trust Co., supra.*)   There-
fore, the executors, since they will never receive the fund,
may never put into effect plans of amortization to pre-
serve it.   In the second place, no part of the surplus
income received by the trustee under the trust indenture
may be reserved by it for amortizaticn purposes.   It is
expressly provided in the indenture that all surplus
income received shall " be paid annually in quarterly
installments so long as the trust shall continue " to the
grantor of the trust estate and after his death to persons
designated by the will of the grantor.   The trustee must
disburse annually to the beneficiaries; it may not reserve
or accumulate any portion of surplus income.   Therefore,
amortization may not be had, either through the auspices
of the executors or of the trustee, and no plan of amortiza-
tion is available to help out the will as a suitable instrument
of designation of persons to receive the trust income.

The will provides in relation to the one-fourth of which
Angier B. Duke, Jr., was to be the first taker, as well as
to the one-fourth of which Anthony Newton Duke was
to be the first taker, that each one-fourth share be paid
over to the Farmers' Loan and Trust Company, as trustee.
That trustee is not directed to pay income on either one-
fourth share directly to Angier B. Duke, Jr., or to Anthony
Newton Duke.   On the contrary, it is required to " pay,
apply and distribute the same to and for the support,
education and maintenance," in one instance, " of my
son Angier B. Duke, Jr., so long as he shall live " and of
his descendants after his death, and, in the other instance,
for the support " of my son Anthony Newton Duke "
and his descendants.   The will provides that such pay-
ments " shall be in such amounts and at such times as in
the uncontrolled discretion of such trustee may be by it
deemed necessary and advantageous for such purposes."
It will be remembered that in *Herzog* v. *Title Guarantee &
Trust Co.* (*supra*) there was a deed to a trustee of certain
property with directions to pay net income as directed

30

[245 N. Y. 447]    Opinion, per KELLOGG, J.    [July,

by the grantor's will; that the grantor made a will whereby he appointed a testamentary trustee to receive and pay out the net income to certain persons named. It was held that this was a sufficient designation of the beneficiaries under the trust deed. It was also held, however, that the disbursement to these beneficiaries must be directly made by the trustee under the deed and not by the trustee under the will. In that case there were no provisions in the will requiring the testamentary trustee to exercise discretion as to the amounts to be paid the beneficiaries. Therefore, the trustee under the deed could pay the entire income to the beneficiaries and comply with the terms of the will. In our case, as in the *Herzog* case, the trustee under the trust indenture must pay, if at all, directly to the beneficiaries named. It may not pay to the testamentary trustee. Therefore, in reference to surplus income, there would be no opportunity for the testamentary trustee to exercise discretion as to the amounts to be paid to the two children. On the other hand, the trustee under the trust indenture could exercise none, for its duty, as we have seen, was to disburse the surplus income annually in quarterly installments to those entitled thereto. Besides, discretion was committed not to it but only to the testamentary trustee. It is clear that Angier B. Duke, as testator, did not intend his two children to be named as beneficiaries to receive directly the full surplus income of the trust fund. It is equally clear that Angier B. Duke, as the grantor of the trust, did not intend that surplus income should be paid to beneficiaries in such sums only as might be required for their support and otherwise that it should be retained by his trustee.

We thus find that the trust indenture, the source of title, and the will, relied upon by the respondents as an instrument of designation of trust beneficiaries, are incapable of reconciliation. The will requires, as stated, that the testator's estate be divided into four equal

parts;.that the four funds, after their enjoyment for life by persons named, shall pass intact, unimpaired by the life uses, to remaindermen named. We have seen that the surplus trust income is not adapted, and may not be adjusted, to such dispositions. In respect to two of the funds, only such income thereupon as may seem proper to the testamentary trustee may be paid to the life beneficiaries, the two children. We have seen that the surplus trust income cannot be adjusted to these testamentary dispositions without doing violence to the provisions of the trust indenture. Clearly, the will of the testator, as an instrument of designation supplementing the trust indenture, since it is incompatible therewith, is unsuited to the task.

The will, it is true, does purport to dispose of " all rights, powers and interests in, over and concerning property of every kind " belonging to the testator. It is argued that the reference to " powers " conclusively shows that the testator intended to exercise the power of appointment reserved by the trust indenture. That paragraph of the will, which contains the clause referred to and directs the executors to make an inventory, contains also the following clause: "All property of whatever kind and wherever situate which the will of my father or the will of my mother either gives me or gives the right to dispose of by my will shall be included in such inventory and appraisal, it being my intention that this and the succeeding provisions of this will shall be an exercise of any such power or disposition by will given me either by the will of my father or the will of my mother." It is significant that neither this clause nor any other clause in the will specifically refers to the power reserved by the trust indenture. The omission gives color to the thought that the word " powers " in the clause first above mentioned refers only to powers under the will of the father and mother of the testator and that the testator, therefore, did not intend to make a dis-

[245 N. Y. 447]      Opinion, per KELLOGG, J.      [July,

position or a designation in reference to surplus trust income. The conclusion which we have reached, however, does not require us to go to the length of holding that the testator did not, within the meaning of section 18 of the Personal Property Law, leave a will " purporting to pass all the personal property of the testator." It is sufficient if the intent of the testator " that the will or testament shall not operate as an execution of the power, appears therein either expressly or by necessary implication." The testator's reserved power under the trust indenture was a power to appoint by will. No power to appoint by deed was given. Therefore, the absolute power of disposition over surplus trust income, and ownership thereof, did not reside in him. (*Genet* v. *Hunt, supra.*) The testator had no right to appoint beneficiaries to take surplus income otherwise than from the hands of the trustee of the trust indenture upon such terms and according to such dispositions as were therein prescribed. His sole authority to make the appointments was the trust indenture. If he made appointments to take otherwise than as prescribed by the indenture he did not execute the power. We think that the testator made no appointment or disposition, and intended to make none, which was consonant with the power reserved. Therefore, we think that the will fails as an instrument of designation and that the trustee under the trust indenture should pay out the surplus trust income in equal shares to Angier B. Duke, Jr., and Anthony Newton Duke, the next of kin of the testator.

The judgment of the Appellate Division and that of the Special Term should be reversed and judgment ordered directing the trustee, the plaintiff, to make payment as herein provided, with costs in all courts to all the parties appearing, payable out of the fund.

CARDOZO, Ch. J., POUND, CRANE, ANDREWS, LEHMAN and O'BRIEN, JJ., concur.

Judgment accordingly.